# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1986

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Arthur Lee Burns, Jr., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 14, 2001

Filed: January 10, 2002

_____

Before BOWMAN, MORRIS SHEPPARD ARNOLD, and BYE, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

A jury convicted Arthur Lee Burns of conspiring to commit credit card fraud, *see* 18 U.S.C. § 1029(a)(2), (b)(2), and (c). He appeals, contending that the district court[1] erred in admitting certain evidence at trial and in calculating the loss attributable to the offense for sentencing purposes. We affirm.

_____

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

I.

Mr. Burns maintains that his due process rights were violated when the district court admitted testimony that he failed to respond to a question during his post-arrest interrogation and that he eventually declined to answer further questions. Mr. Burns relies on *Doyle v. Ohio*, 426 U.S. 610, 611, 619 (1976), in which the Supreme Court held that the government's reliance on a defendant's post-arrest silence to cross-examine him at trial violated his right to due process. In *Doyle*, 426 U.S. at 618, the Court reasoned that the *Miranda* warnings, *see Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966), given to the defendant carried an implicit assurance that the government would not penalize him by using his post-arrest silence against him.

Here, however, Mr. Burns specifically waived his *Miranda* rights, including his right to remain silent, and he responded to post-arrest questioning regarding a scheme to obtain checks fraudulently through Western Union by the unauthorized use of credit card information. At trial, a United States Secret Service agent testified that during the questioning that occurred after he waived his rights Mr. Burns admitted that he had cashed checks, but that when asked whether he had recruited others to cash checks he did not respond and "just looked" at those questioning him. According to the agent, after failing to answer that question, Mr. Burns responded to additional inquiries, and when Mr. Burns eventually indicated that he did not want to answer any more questions, the interrogation stopped. On appeal, Mr. Burns notes that the written *Miranda* waiver that he signed stated that he had "been told that" he could "stop talking at any time."

We do not believe that the admission of Mr. Burns's silence in response to one question posed to him in the midst of his interrogation was a violation of the Supreme Court's holding in *Doyle*. Initially, we observe that a defendant's equivocal conduct generally is not sufficient to invoke his or her fifth amendment right to remain silent. *See Simmons v. Bowersox*, 235 F.3d 1124, 1131 (8th Cir. 2001), *cert. denied*, 122 S. Ct. 280 (2001), and we do not believe that Mr. Burns invoked this

constitutional right when he was silent in response to a question. In addition, we have held that where the accused initially waives his or her right to remain silent and agrees to questioning, but "subsequently refuses to answer further questions, the prosecution may note the refusal because it now constitutes part of an otherwise admissible conversation between the police and the accused." *United States v. Harris*, 956 F.2d 177, 181 (8th Cir. 1992), *cert. denied*, 506 U.S. 827 (1992); *see also United States v. Collins*, 652 F.2d 735, 739 (8th Cir. 1981), *cert. denied*, 455 U.S. 906 (1982). Similarly, we believe that Mr. Burns's silent response to one inquiry during the interrogation and eventual refusal to respond to further questioning were "part of an otherwise admissible conversation" and that the admission of the conversation in its entirety did not violate his due process rights.

Even if it was error to admit the testimony regarding Mr. Burns's silence, moreover, we believe that the error was harmless beyond a reasonable doubt. *See Fields v. Leapley*, 30 F.3d 986, 991 (8th Cir. 1994) (standard of review). Although the district court did not attempt to cure the alleged error, the government neither used Mr. Burns's silence when it cross-examined him at trial nor referred to it during closing argument. Instead the government emphasized to the jury that the account of the events that Mr. Burns actually offered when he was first questioned differed markedly from his trial testimony. Furthermore, we believe that the defendant's exculpatory evidence was " 'transparently frivolous,' " and that the documentary and testimonial evidence supporting the jury's verdict was overwhelming. *See Fields,* 30 F.3d at 991 (quoting *Chapman v. United States*, 547 F.2d 1240 (5th Cir. 1977), *cert. denied*, 431 U.S. 908 (1977)).

## II.

Mr. Burns also contends that his Sixth Amendment right to confront the witnesses against him was violated when the district court, over his objection, admitted testimony regarding the statements of Diane Evans, an alleged co-conspirator, who failed to appear at trial in response to a subpoena. At trial, a witness

who was not involved in the crime testified that she gave Ms. Evans a ride and noticed at the time that she was carrying several bags, including a duffel bag filled with papers from a rental car company and from Western Union. The witness further testified over the defendant's objection that when she asked Ms. Evans what she was doing with these papers, Ms. Evans responded that Mr. Burns and another co-conspirator, Samuel Brooks, "would be in a lot of trouble" if the police found out about the contents of the bags. The witness also stated that Ms. Evans told her that "they were getting money out of an account and then Western Unioning it back to where the people wouldn't actually know it and asking somebody to go sign for the Western Union."

The government contends, among other things, that the statements were admissible under Fed. R. Evid. 801(d)(2)(E). Under this rule an out-of-court statement from a co-conspirator that incriminates the defendant is "not hearsay if ... [it] is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." *See* Fed. R. Evid. 801(d)(2)(E); *see also United States v. Whitehead*, 238 F.3d 949, 951 (8th Cir. 2001). We find it unnecessary to resolve this matter because we conclude that any error in admitting the hearsay evidence was "harmless beyond a reasonable doubt," *Chapman v. California*, 386 U.S. 18, 24 (1967), because, as we have already said, the government submitted overwhelming evidence of Mr. Burns's guilt, including numerous documents and the testimony of his co-conspirator, Mr. Brooks. *See United States v. Wright*, 932 F.2d 868, 880 (10th Cir. 1991) (standard of review), *cert. denied*, 502 U.S. 962 and 502 U.S. 972 (1991); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 681-84 (1986) (applying harmless error analysis to violation of confrontation clause).

## III.

We address, finally, Mr. Burns's argument that the district court erred in sentencing him. According to Mr. Burns, the court should not have included in its loss calculation the losses resulting from fraudulent credit card transactions that

involved Leon Timmons and John Tate and those individuals whom they recruited. Mr. Burns asserts that Mr. Timmons and Mr. Tate were involved in different conspiracies with Mr. Brooks from the one of which he was a member, or, in the alternative, that even if they were involved in the same conspiracy, he did not "jointly undertake[] criminal activities" with them as that phrase is used in U.S.S.G. § 1B1.3(a)(1)(B). Mr. Burns also contends that, contrary to the finding of the presentence investigation report, he did not introduce Mr. Timmons and Mr. Tate to Mr. Brooks.

Under the United States Sentencing Guidelines, the offense level in fraud cases may be increased depending upon the loss attributed to the offense committed. *See* U.S.S.G. § 2F1.1(b) (1995) (deleted by consolidation with U.S.S.G. §2B1.1, Nov. 1, 2001). The government has the burden of proof on the amount of the loss. *See United States v. Berndt*, 86 F.3d 803, 811 (8th Cir. 1996). To determine what conduct should be considered when calculating the relevant loss, a sentencing court looks to U.S.S.G. § 1B1.3, which deals with relevant conduct. *See e.g., United States. v. Stover*, 93 F.3d 1379, 1388 (8th Cir. 1996).

Where, as here, the sentencing judge also presided over the trial, the judge may rely on evidence submitted at trial to support the sentence imposed. *See United States v. Jimenez-Villasenor*, 270 F.3d 554, 562-63 (8th Cir. 2001). The district court at sentencing found that Mr. Burns's situation was "a classic example of 'In for a penny, in for a pound,'" and stated that Mr. Burns was "involved in this thing throughout," and the fact that he did not benefit from some of the transactions did not "diminish his participation." We conclude that there was sufficient evidence from which the district court could have found that Mr. Burns was a part of the same conspiracy that involved Mr. Tate and Mr. Timmons and their recruits, that he actually assisted in bringing about the contested criminal activities, and that he was therefore directly accountable at sentencing for the transactions because he "aided [or] abetted" them, *see* § 1B1.3(a)(1)(A).

The government offered evidence at trial that when Mr. Brooks arrived in Kansas City he was knowledgeable about credit card fraud, and that he shared this knowledge with Mr. Burns in return for living at Mr. Burns's residence. Mr. Brooks testified that Mr. Burns obtained completed forms from a car-rental company for use in a scheme; the forms included the renters' credit card numbers and other identifying information. Mr. Brooks and Mr. Burns worked closely together. For example, they used the car-rental information to purchase merchandise and to obtain checks through Western Union written to Mr. Burns. Mr. Burns and Mr. Brooks also recruited others to cash checks obtained in the same way through Western Union. According to uncontested findings in the PSR and the government's evidence at trial, Mr. Timmons and Mr. Tate and others whom they recruited became involved in the scheme after Mr. Burns, and they used information from the forms to obtain funds through Western Union transfers. There was also evidence that Mr. Brooks told Mr. Burns to give Mr. Timmons some of the information for his use.

We believe that there was sufficient evidence from which the district court could conclude that there was but one conspiracy. "A single conspiracy may exist even if the participants and their activities change over time, and even if many participants are unaware of, or uninvolved in, some of the transactions." *United States v. Roach*, 164 F.3d 403, 412 (8th Cir.1998), *cert. denied*, 528 U.S. 845 (1999). All conspirators need not even know each other. *See United States v. Rosnow*, 977 F.2d 399, 405 (8th Cir. 1992) (per curiam), *cert. denied*, 507 U.S. 990 (1993). For a single conspiracy to exist, " 'it is sufficient that ... the co-conspirators were aware of the general nature and scope of the conspiracy and knowingly joined in the overall scheme.' " *United States v. Pullman*, 187 F.3d 816, 821 (8th Cir. 1999) (quoting *United States v. Zimmerman*, 832 F.2d 454, 457 (8th Cir.1987) (per curiam)). We believe that the district court could have found on the evidence before it that Mr. Burns, Mr. Timmons, and Mr. Tate were sufficiently aware through Mr. Brooks of the general nature and scope of the conspiracy, and that Mr. Burns was

aware of the manner in which the information from the rental car applications was being used.

Under the sentencing guidelines, a defendant is accountable for the offense conduct that he "aided [or] abetted." U.S.S.G. § 1B1.3(a)(1)(A). We believe that the evidence was sufficient to allow the district court to find that Mr. Burns by providing the rental applications to Mr. Brooks to be used in the fraudulent scheme knowingly aided and abetted in the challenged transactions. Because we conclude based on § 1B1.3(a)(1)(A) of the sentencing guidelines that there was evidence from which the district court could have found that the direct conduct of Mr. Burns himself justified the sentence he received, we need not address his contention that the losses resulting from the conduct of others was wrongly attributed to him because that conduct was not "in furtherance of ... jointly undertaken criminal activity" under § 1B1.3(a)(1)(B).

## IV.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.