STATE OF NORTH CAROLINA v. ANTIONNE LEMEL LYLES

No. COA04-969

(Filed 2 August 2005)

## 1. Evidence— lab report—performing chemist unavailable— basis of expert opinion—right of confrontation

Lab reports performed by an unavailable chemist were properly admitted as the basis of the expert opinion of a Charlotte-Mecklenburg supervising chemist that substances taken from defendant were cocaine. Furthermore, there was no confrontation clause violation where the expert witness was available for cross-examination.

## 2. Evidence— hearsay—lab reports—exceptions—public records and business records—law enforcement exclusion

The law enforcement exclusion in the public records hearsay exception does not limit the business records exception. N.C.G.S. § 8C-1, Rules 803(8) and 803(6).

## 3. Constitutional Law— right to remain silent—quiet demeanor during questioning—closing argument not an impermissible comment

A detective's testimony and the prosecutor's jury arguments about defendant's quiet demeanor during questioning did not constitute improper comments on defendant's right to remain silent.

## 4. Evidence— codefendant charged—admission not plain error

There was no plain error in a cocaine trafficking prosecution from the admission of evidence that a codefendant was also charged. There was no testimony suggesting that the codefendant had been found guilty, pleaded guilty, or pleaded nolo contendere,

and nothing to indicate that the jury would have reached a different result without this testimony.

Appeal by defendant from judgment signed 14 January 2004 by Judge Robert P. Johnston in Mecklenburg County Superior Court. Heard in the Court of Appeals 23 March 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Tina Lloyd Hlabse, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Kelly D. Miller, for defendant.*

BRYANT, Judge.

Antionne Lemel Lyles (defendant) appeals his judgment signed 14 January 2004, entered consistent with a jury verdict finding him guilty of two counts of trafficking in cocaine.

Defendant was arrested at the airport located in Charlotte, North Carolina (Charlotte Airport) on 29 January 2002, after a search revealed a pellet on his person and two packages in his shoes which field-tested positive for cocaine. Defendant was charged and subsequently indicted for trafficking in 400 or more grams of cocaine by transportation and trafficking in 400 or more grams of cocaine by possession.

These matters came for hearing at the 12 January 2004 criminal session of Mecklenburg County Superior Court with the Honorable Robert P. Johnston presiding. At trial, the State introduced expert testimony by Charlotte-Mecklenburg Police Department Crime Lab supervising chemist Tony Aldridge. Aldridge's testimony was based on the test results of Willie Rose, a Charlotte-Mecklenburg Police Department Crime Lab chemist. Rose analyzed the contents of both the pellet and two packages seized from defendant's shoes. The results of Rose's tests consisting of two Crime Laboratory Reports, indicated that the substance in the two shoe packets was "Cocaine, 735.86 grams," and that the substance in the pellet was "Cocaine, 7.53 grams."

Before trial, Rose relocated and was not available to testify. Aldridge testified it was the regular practice of the Charlotte-Mecklenburg Police Department Crime Lab Chemistry section to make and keep Crime Laboratory Reports of the type written by Rose. Over defendant's objection, the trial court allowed the Crime

Laboratory Reports to be received into evidence under N.C. Gen. Stat. § 8C-1, N.C. R. Evid. 803(6) (Rule 803(6)), the business records exception to the hearsay rule.

Defendant was found guilty as charged on 14 January 2004. The trial court ordered the convictions consolidated for judgment and sentenced defendant to 175-219 months imprisonment and imposed a mandatory fine of $250,000.00. Defendant appealed.

The issues on appeal are whether the trial court erred in: (I) admitting into evidence the Crime Laboratory Reports prepared by a non-testifying chemist, and in admitting the expert testimony of a chemist whose opinion was based on the analysis of the non-testifying chemist; (II) admitting evidence regarding defendant's exercise of his right to remain silent; and (III) admitting evidence that a co-defendant was also charged in connection with the search and seizure at the airport which resulted in defendant's arrest.

I

[1] Defendant asserts the trial court erred by admitting into evidence the Crime Laboratory Reports under the business records exception to the hearsay rule, arguing the reports were inadmissible hearsay, and that admission of the reports and testimony of Aldridge were in violation of the rules of evidence and the Confrontation Clause of the United States Constitution. The State argues the reports were properly admitted as business records under Rule 803(6). We conclude, however, the reports were properly admitted as the basis of the expert opinion given by Aldridge[1].

[2] 1. Defendant argues that the language of N.C. Gen. Stat. § 8C-1, N.C. R. Evid. 803(8) (Rule 803(8)) regarding public records and reports restricts the business records exception of Rule 803(6). We find defendant's argument unpersuasive.

In support of his argument, defendant cites the case of *United States v. Oates*, 560 F.2d 45 (2d Cir. 1977), in which the Court of Appeals for the Second Circuit held that exhibits purporting to be the official report and accompanying worksheet of a United States customs service chemist were inadmissible under the "law enforcement official" exception [Rule 803(8)] and the business records exception [Rule 803(6)]. *Oates* at 84. In *Oates*, the chemist had analyzed a white powdery substance and determined it to be heroin. His official report to the same effect was ruled inadmissible. *Id.* The court in *Oates* reasoned that the restrictions in Rule 803(8) overrode the language of Rule 803(6). *Id.* at 83-84.

In *State v. Smith*, 312 N.C. 361, 323 S.E.2d 316 (1984), our Supreme Court expressly rejected the rationale of *Oates*. In *Smith*, the defendant argued that a statute permitting the use of a chemical analyst's affidavit to prove blood alcohol concentration, in lieu of the analyst's live appearance, violated the defendant's constitutional right to confrontation. In deciding the issue and considering the relationship between

Our Supreme Court has considered the admissibility of the basis of an expert opinion:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

*State v. Golphin*, 352 N.C. 364, 467, 533 S.E.2d 168, 235 (2000) (citing N.C.G.S. § 8C-1, Rule 703 (1999)) (allowing the admission of a doctor's report as the basis of expert opinion when that report contained several hearsay statements not offered for the truth of the matter asserted). The Court continued:

> Allowing disclosure of the bases of an expert's opinion "is essential to the factfinder's assessment of the credibility and weight to be given to it." *State v. Jones*, 322 N.C. 406, 412, 368 S.E.2d 844, 847 (1988). Testimony as to matters offered to show the basis for a physician's opinion and not for the truth of the matters testified to is not hearsay . . . . Its admissibility does not depend on an exception to the hearsay rule, but on the limited purpose for which it is offered. *State v. Wood*, 306 N.C. 510, 516-17, 294 S.E.2d 310, 313 (1982); *see also Jones*, 322 N.C. at 412, 368 S.E.2d at 847; *State v. Allen*, 322 N.C. 176, 184, 367 S.E.2d 626, 630 (1988).

*Id.*

At trial, Aldridge was tendered and admitted as an expert in the field of forensic chemistry without objection. Aldridge then testified that, in his expert opinion, based on his review of Rose's findings, both packets and the pellet tested positive for cocaine. The reports themselves were properly admitted as the basis of Aldridge's opinion. *State v. Fair*, 354 N.C. 131, 162, 557 S.E.2d 500, 522 (2001) ("[A]n expert may properly base his or her opinion on tests performed by another person, if the tests are of the type reasonably relied upon by experts in the field."). Further, Aldridge testified that the methods

Rule 803(6) and Rule 803(8), our Supreme Court inferred that the state legislature adopted Rule 803(8) without intending to change the common law rule allowing admission of public records of purely "ministerial observations." *Smith* at 381, 323 S.E.2d at 327. Instead the N.C. Supreme Court agreed with a majority of other courts that the intended purpose of Rule 803(8) was to prevent prosecutors from attempting to prove their cases through police officers' reports of their observations during the investigation of crime. *Id.* (citing *State v. Smith*, 675 P.2d 510, 512 (Or. App. 1984); *United States v. Grady*, 544 F.2d 598, 604 (2d Cir. 1976)).

**STATE v. LYLES**

[172 N.C. App. 323 (2005)]

employed by Rose were those reasonably relied upon by other forensic chemists, that Aldridge had actually calibrated Rose's machines, used the same machines for similar experiments, and reviewed Rose's work after the analysis was completed.

As our Supreme Court held in *State v. Daughtry*, 340 N.C. 488, 511, 459 S.E.2d 747, 758 (1995), "inherently reliable information is admissible to show the basis of an expert's opinion, even if the information would otherwise be inadmissible hearsay." There is no evidence in the instant case suggesting the information contained in Rose's test results was not inherently reliable. During *voir dire* and during the trial, Aldridge testified about the types of tests Rose performed on the packages, how those tests were conducted, and how Aldridge reviewed the results of those tests. Those results were used by Aldridge in forming his expert opinion and were admissible at trial to show the basis of that opinion. Further, there was no Confrontation Clause violation where, as here, the expert was available for cross-examination. "The admission into evidence of expert opinion based upon information not itself admissible into evidence does not violate the Sixth Amendment guarantee of the right of an accused to confront his accusers where the expert is available for cross-examination." *State v. Delaney*, 613 S.E.2d 699, 2005 N.C. App. LEXIS 1160, *1 (N.C. Ct. App., 2005) (quoting *State v. Huffstetler*, 312 N.C. 92, 108, 322 S.E.2d 110, 120-21 (1984)).

In the instant case, defendant had ample opportunity to cross-examine Aldridge about the basis of his expert opinion testimony. In fact, defendant's entire cross-examination centered on the fact that Aldridge reviewed the test results of another analyst and did not perform the tests himself. As a result, any credibility issues regarding the basis of Aldridge's expert opinion testimony were thoroughly explored before the jury. We hold that defendant's Sixth Amendment right to confront his accusers was not violated by the admission of Rose's Criminal Laboratory Reports or Aldridge's expert opinion testimony.

II

[3] Defendant next argues the trial court committed plain error by allowing into evidence testimony regarding defendant's exercise of his right to remain silent[2]. Specifically, defendant points our attention

---

2. Because defendant failed to object at trial, this assignment or error is reviewed under the plain error standard. *See State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997).

to the testimony of Detective James Kolbay ·of the Charlotte-Mecklenburg Police Department that defendant was quiet during questioning and often would not respond to questions. Defendant also argues the prosecutor's reference to this testimony during closing arguments constituted plain error[3].

Plain error is error so fundamental as to amount to a miscarriage of justice, or error that probably resulted in the jury reaching a different verdict than it otherwise would have reached. *State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation omitted). The plain error rule applies only in truly exceptional cases. *State v. Dyson,* 165 N.C. App. 648, 651, 599 S.E.2d 73, 75 (2004) (citation omitted). The appellate court must be convinced that, absent the error, the jury probably would have reached a different result. *See, e.g., State v. Walker,* 316 N.C. 33, 340 S.E.2d 80 (1986) (holding cross-examination of a defendant about his silence after he was arrested and advised of his constitutional rights was not plain error).

The transcript reveals that Detective Kolbay was not questioned regarding defendant's exercise of his right to remain silent. Instead, Detective Kolbay was asked about defendant's demeanor during questioning. Detective Kolbay testified that defendant waived his *Miranda* rights and agreed to speak with him. He testified that defendant was never upset during questioning, only quiet and slightly unresponsive.

During closing argument, the prosecutor mentioned that defendant did not answer some of Detective Kolbay's questions and did not react when the drugs were found on his person. Defendant specifically draws the court's attention to the following remarks of the prosecutor during closing argument:

> Well, you know, maybe you heard Detective Kolbay say the co-defendant was crying, that was his demeanor.

> Well, the Defendant did not show any emotion. He was not upset like the co-defendant was.

> . . .

> First of all, no eye contact with Inspector Knight-Norwood. Defense Counsel asked wasn't it normal for someone to be nervous when you're being interviewed by Customs?

---

3. Defendant did not object to the prosecutor's closing argument, nor did he originally assign it as error. Defendant's motion to amend the record on appeal to add a new Assignment of Error 18 regarding the prosecutor's remarks during closing arguments was allowed on 21 September 2004.

You're not nervous, if you're not trying to hide anything. Sure he was nervous, he had 738 grams of cocaine in his shoes. He had a pellet, 7.5 grams in his stomach. Yes, he was nervous. No eye contact. How about no reaction when it was found?

. . .

Now, as far as knowingly, again, we're not able to prove that the Defendant said yes, I knew it was there, and I knew it was cocaine. And that is not what we're required to prove.

. . .

Rarely are you going to have a Defendant who stands up and says, I knew it was cocaine, I knew I had it. That would be direct evidence of knowledge.

Circumstantial evidence of knowledge, all the things we just mentioned. I ask you to consider those, and find circumstantial evidence can support he knowingly possessed, and he knowingly transported.

These closing statements do not amount to an impermissible comment on defendant's right to remain silent. Moreover, given the evidence before the jury, we cannot say the jury would likely have reached a different result had Detective Kolbay's testimony and the prosecutor's closing statements regarding defendant's demeanor not been allowed. The trial court did not commit plain error.

### III

**[4]** Finally, defendant argues the trial court committed plain error by admitting evidence that co-defendant Marcus McCoy was also charged as a result of the seizure at the airport.

Evidence of convictions, guilty pleas, and pleas of nolo-contendere of non-testifying co-defendants is inadmissible unless offered for some legitimate purpose. *State v. Rothwell*, 308 N.C. 782, 303 S.E.2d 798 (1983). This Court has previously determined that this rule applies equally to co-defendants who are charged and tried. *State v. Gary*, 78 N.C. App. 29, 337 S.E.2d 70 (1985). In *State v. Batchelor*, 157 N.C. App. 421, 579 S.E.2d 422 (2003), we held that *Gary* applies where there is only evidence that a co-defendant was charged with similar crimes as the defendant, but not evidence that the co-defendant was tried. *Batchelor* at 431, 579 S.E.2d 429. In *Batchelor* we held the admission of such testimony did not rise to the level of plain

error where there was no testimony that the co-defendant had been found guilty, pleaded guilty, or pleaded nolo contendere to the charges. *Id.* Specifically, the Court wrote:

> [W]e conclude the trial court erred in admitting evidence that Mr. Harris was charged with similar offenses as defendant. However, this error did not amount to plain error . . . Detective Bowes testified that the charges were still pending against Mr. Harris and thus, there was no testimony that Mr. Harris had been found guilty, pleaded guilty, or pleaded nolo contendere to the charges. It is unlikely that the jury inferred defendant's guilt from the evidence that his co-defendant had been charged with similar offenses.

*Id.*

Much like *Batchelor*, we can find no testimony in the record before us suggesting the co-defendant had been found guilty, pleaded guilty, or pleaded nolo contendere. There is nothing to indicate that a jury would have reached a different result had it not been for the admission of the testimony. As a result, the admission of testimony involving the co-defendant, while error, does not rise to the level of plain error. This assignment of error is overruled.

No error.

Judges McGEE and STEELMAN concur.