STATE OF NORTH CAROLINA
v.
FRANK DURAND TOMLIN
No. COA07-1558
Court of Appeals of North Carolina
Filed November 4, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Alvin W. Keller, Jr., for the State.
Parish, Cooke & Condlin, by James R. Parish, for defendant appellant.
McCULLOUGH, Judge.

FACTS
The State's evidence at trial tended to show the following: On 25 June 2003 around 1:30 a.m., Sheila Harrington, a thirty-five-year-old female, was found dead at 1406 R.C. Baldwin Avenue, outside a day care center. She was lying near a school bus dressed in the white T-shirt, khaki shorts, socks, and tennis shoes, the same that her sister, Anne Harrington ("Anne"), had last seen her wearing earlier that evening. When Sheila's body was discovered, fragments of cinder block were observed around her. Dr. Aaron Gleckman testified that an autopsy revealed Sheila had sustained multiple stab wounds to her face and neck, including one which severed her right carotid artery. In addition, Sheila sustained blunt force injuries to her head and chest. According to Dr. Gleckman, these injuries were consistent with being hit by a cinder block. Anne testified their family was aware that Sheila had a drug problem, specifically with crack cocaine, and they had tried to get her help.
Randy Earl Bethea ("Bethea"), one of defendant's friends, testified he had known Frank Durand Tomlin ("defendant") for about ten to fifteen years. According to Bethea, on the evening of 24 June 2003, he was walking with Shaqueda Gilbert, Tracy Little, A.J. Butler, and Brittany Watts near the day care center. While walking, the friends saw defendant exit from a path beside the day care center. Defendant approached the group and told Bethea that a female had run off with some of his crack. Defendant asked Bethea to come with him to the path so that defendant could show Bethea something, but Bethea declined and the group continued walking.
Shaqueda Gilbert ("Gilbert") testified that she saw defendant and Bethea talking once defendant approached the group. After Bethea returned to the group, he began talking with A.J. Butler ("Butler"). Although Gilbert testified she never heard defendant say that he killed anyone, Gilbert said Butler later told her that he could not believe defendant had "killed that woman."
When Butler was called to the stand to describe what took place that evening, Butler testified that he saw what appeared to be white shoes on the ground between the school bus and the day care center. Butler stated at trial that he could not remember the content of his statements to Detective Dix, an officer with the High Point Police Department, when she interviewed him. Butler also testified, however, that his previous statements to Detective Dix, in which he indicated that he had seen defendant with a long knife in his sleeve near the day care center on the night of the murder, were truthful.
James Jones ("Jones"), an acquaintance of defendant, testified that he saw defendant the day after the murder. Defendant told Jones that he had been fighting near the day care center. Defendant talked as if the fight was serious and would be in the newspaper. Defendant said that he was out with some other men, and from this conversation Jones inferred that defendant meant he was out selling drugs. Defendant stated to Jones that a female tried to knock the drugs out of their hands, and then tried to run away with some of the drugs. Defendant attempted to stop the female from running away with the drugs by throwing rocks. Jones then testified that defendant said he chased the female up the street, punched her, and knocked her out. Jones noticed defendant was "jittery" and seemed nervous, so he later called defendant's aunt, who is also defendant's guardian, to alert her to the possibility that defendant could be in trouble.
The final witness for the State was Detective Dix, who arrived at the scene after Sheila's body was discovered and who became lead investigator on the case. After defendant's arrest, Detective Dix interviewed him. Detective Dix showed defendant a photograph of Sheila, lying on her back next to the school bus. Upon viewing the photograph of the victim, defendant responded, "she's a crack head" and stated that he did not "like crack heads."
Defendant's case was tried as a non-capital case on 16 March 2005 in Guilford County Superior Court. On 19 May 2005, the jury found defendant guilty of first-degree murder and the trial court entered a mandatory sentence of life imprisonment without parole. Defendant now appeals.

I.
Defendant assigns error to the trial court's denial of his motion to dismiss the charge of first-degree murder. Defendant argues that the evidence presented was insufficient to establish that he intentionally killed Sheila with premeditation and deliberation, to satisfy the elements of first-degree murder. We find no error. "In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences." State v. Barnes, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993). To withstand a motion to dismiss based on insufficiency of the evidence, the trial court must be presented with substantial evidence of each element of the offense charged and of defendant's being the perpetrator of the offense. See id. This test is the same whether the evidence is direct or circumstantial, or both. Id. at 75, 430 S.E.2d at 918-19. "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." State v. Vick, 341 N.C. 569, 583-84, 461 S.E.2d 655, 663 (1995). "'If there is substantial evidence  whether direct, circumstantial, or both  to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied.'" Id. at 584, 461 S.E.2d at 663 (quoting State v. Locklear, 322 N.C. 349, 358, 368 S.E.2d 377, 382-83 (1988)).
To support a verdict of first-degree murder, the State must show defendant unlawfully killed another human being, with malice, premeditation, and deliberation. See State v. Brewington, 179 N.C. App. 772, 778, 635 S.E.2d 512, 517 (2006); see also N.C. Gen. Stat. § 14-17 (2007). Only the elements of premeditation and deliberation are at issue here; malice is uncontested. Accordingly, we will examine the State's evidence with regard to these elements only. "Premeditation means that the defendant formed the specific intent to kill the victim for some length of time, however short, before the actual killing." Brewington, 179 N.C. App. at 778, 635 S.E.2d at 517. "Deliberation means that the defendant carried out the intent to kill in a cool state of blood, `not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation.'" Id. (quoting State v. Hamlet, 312 N.C. 162, 170, 321 S.E.2d 837, 842-43 (1984)). "Premeditation and deliberation may be proven through circumstances and actions such as want of provocation by the deceased, the conduct and statements of the defendant before and after the killing, including threats, previous ill will between the parties, or evidence that the killing was done in a brutal manner." Id. at 778, 635 S.E.2d at 517. Further, our Supreme Court has held that the premeditation and deliberation elements are satisfied where multiple wounds are inflicted if, "[n]o matter what defendant's intent may have been before he inflicted the first wound, there was adequate time between each blow for defendant to have premeditated and deliberated his actions." State v. Leazer, 353 N.C. 234, 239, 539 S.E.2d 922, 926 (2000). In the case sub judice, all the elements of first-degree murder were satisfied, including premeditation and deliberation. The evidence presented at trial suggests that defendant was in the area at the time the killing took place. Furthermore, Jones testified that defendant said a woman stole his crack and that he then hit the woman and knocked her down. Therefore, the State presented sufficient evidence to demonstrate that defendant was the perpetrator of the alleged crime. At trial, the State also presented substantial evidence to prove the killing was premeditated and carried out deliberately. The State's evidence tended to show that defendant inflicted multiple injuries to Sheila with at least two different objects, a knife and a cinder block. Thus, the State presented sufficient evidence to support a conclusion by the jury that defendant committed the alleged crime after deliberation and premeditation. The evidence is therefore sufficient to survive a motion to dismiss based on insufficiency of evidence. We find no error.

II.
The next issue on appeal is whether the trial court erred in failing to instruct the jury on the lesser-included offense of second-degree murder. We conclude that the trial court did not err. When there exists a claim of improper jury instructions, which have not been objected to at trial, the instructions are reviewed for plain error. See State v. Greene, 351 N.C. 562, 566-67, 528 S.E.2d 575, 578,cert. denied, 531 U.S. 1041, 148 L. Ed. 2d 543 (2000). To demonstrate plain error, the defendant has the burden of showing: "(i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial." State v. Bishop, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997). Furthermore, a defendant is entitled to a new trial only, if absent the error, the jury probably would have reached a different result. See State v. Jones, 355 N.C. 117, 125, 558 S.E.2d 97, 103 (2002).
A defendant "is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." Keeble v. United States, 412 U.S. 205, 208, 36 L. Ed. 2d 844, 847 (1973). "Where no lesser included offense exists, a lesser included offense instruction detracts from, rather than enhances, the rationality of the process." Spaziano v. Florida, 468 U.S. 447, 455, 82 L. Ed. 2d 340, 349 (1984). "If the State's evidence establishes each and every element of first-degree murder and there is no evidence to negate these elements, it is proper for the trial court to exclude second-degree murder from the jury's consideration." State v. Flowers, 347 N.C. 1, 29, 489 S.E.2d 391, 407 (1997).
As we have discussed, first-degree murder is the unlawful killing of another human being, with malice, premeditation and deliberation. See Brewington, 179 N.C. App. at 778, 635 S.E.2d at 517. Unlike first-degree murder, second-degree murder does not require that the killing be premeditated or that the killer deliberate before killing the victim. Rather, second-degree murder is defined as the unlawful killing of a human being with malice. See Flowers, 347 N.C. at 29, 489 S.E.2d at 407.
Here, defense counsel did not object to the jury instructions at trial so we will review defendant's argument for plain error. On appeal, defendant asserts the trial court erred by failing to provide an instruction on second-degree murder. According to defendant, the evidence could have supported convictions of either first-degree or second-degree murder. Therefore, defendant argues, the trial court should have given instructions with regard to both the more serious offense of first-degree murder as well as the lesser included offense of second-degree murder. On review, the evidence presented at trial shows that defendant, angered over the victim stealing his crack, struck the victim multiple times with a cinder block and stabbed her multiple times as well. Thus, the evidence presented at trial was sufficient to satisfy each of the elements of first-degree murder, including premeditation and deliberation. See Leazer, 353 N.C. at 239, 539 S.E.2d at 926 (holding the elements of premeditation and deliberation may be shown when "there was adequate time between each blow for defendant to have premeditated and deliberated his actions"). As defendant did not put forth sufficient evidence to negate these elements, we hold the trial court properly excluded second-degree murder from the jury's consideration.

III.
We now address defendant's argument that the trial court erred in allowing the prosecutor to comment that the evidence placing defendant at the scene of the crime was uncontradicted and that defendant offered no contradicting evidence. This comment was made in the prosecutor's closing argument, and over defense counsel's objection. We find no error.
A prosecutor's closing remarks "are to be viewed in the context in which they are made and in light of the overall factual circumstances to which they refer." State v. Davis, 349 N.C. 1, 44, 506 S.E.2d 455, 479 (1998), cert. denied, 526 U.S. 1161, 144 L. Ed. 2d 219 (1999). "To justify a new trial, an inappropriate prosecutorial comment must be sufficiently grave to constitute prejudicial error." State v. Hall, ___ N.C. App. ___, ___, 653 S.E.2d 200, 210 (2007). "[T]o reach the level of `prejudicial error' in this regard . . . the prosecutor's comments must have `so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" State v. Worthy, 341 N.C. 707, 709-10, 462 S.E.2d 482, 483 (1995) (citation omitted).
In the case sub judice, the prosecutor stated in his closing argument that all five of the individuals walking together "put the defendant right there at the day care. That's uncontradicted. No evidence that he was anywhere else. He's not offering any evidence, any alibi witness." Defense counsel objected on the grounds that this statement made reference to defendant's decision not to testify or offer evidence. The trial court overruled defendant's objection, however, holding the statement was not a comment on defendant's failure to take the stand.
Our Supreme Court has previously examined the issue of improper prosecutorial statements regarding the absence of alibi witnesses. See State v. Jordan, 305 N.C. 274, 287 S.E.2d 827 (1982). In his closing argument to the jury, the prosecutor in Jordan noted that the defendant had not produced any alibi witnesses, and posed the following question to the jury: "' Where are the witnesses who can put [defendant] anywhere else?'" Id. at 279-80, 287 S.E.2d at 831. The defendant assigned error to the statement and argued it amounted to an impermissible comment on the defendant's failure to testify. Id. at 280, 287 S.E.2d at 831. Specifically, defense counsel argued that the prosecutor's argument, pointing out that the defendant had not offered an alibi witness, amounted to an impermissible comment on the defendant's failure to place himself away from the scene of the crime. Id. The argument was rejected. Id. Upon review, our Supreme Court held that although a "defendant's failure to take the stand and deny the charges may not be the subject of comment, the defendant's failure to produce exculpatory evidence or to contradict evidence presented by the State may properly be brought to the jury's attention by the State in its closing argument." Id. The Court further held that the prosecutor's remark "was directed solely toward the defendant's failure to offer evidence to rebut the State's case, not at defendant's failure to take the stand himself[.]" Id. Therefore, the statement did not constitute an impermissible comment on the defendant's failure to testify. Id.
Here, the prosecutor stated that defendant had not offered any alibi witnesses or evidence to place defendant away from the scene of the crime. Therefore, we hold that in the instant case, as in Jordan, the prosecutor's argument was not an impermissible comment on defendant's failure to take the stand. Rather, it was a permissible comment on defendant's failure to present exculpatory evidence. Accordingly, we find no error in the trial court's denial of defendant's motion.

IV.
In his fourth argument on appeal, defendant contends the trial court allowed the prosecutor to make an impermissible comment on defendant's decision to invoke his right to silence. We disagree.
"Prosecutors are granted wide latitude in the scope of their argument." State v. Zuniga, 320 N.C. 233, 253, 357 S.E.2d 898, 911 (1987), cert. denied, 484 U.S. 959, 98 L. Ed. 2d 384 (1987), cert. allowed, 330 N.C. 617, 412 S.E.2d 95 (1992). "The control of the prosecutor's closing argument is within the discretion of the trial judge." Id. Only where the allegedly improper argument was "so prejudicial and grossly improper as to interfere with defendant's right to a fair trial" will the trial judge be required to intervene ex mero motu. State v. Alford, 339 N.C. 562, 571, 453 S.E.2d 512, 516 (1995); Zuniga, 320 N.C. at 253, 357 S.E.2d at 911.
Here, the State provided testimony from Detective Dix regarding an interview she conducted with defendant. According to Dix, after she informed defendant of his Miranda rights, including his right to remain silent, defendant executed a waiver of those rights and began answering the detective's questions. Shortly after providing this testimony, the following exchange occurred: [Prosecutor]: Did you ask him if he killed Sheila Harrington?
[Detective Dix]: Talked about the case and, you know, I had a warrant on him for murder and he never denied killing anyone.
[Prosecutor]: Have you made it clear to him that you had accused him by warrant of killing her?
[Detective Dix]: Yes. Told him how, told him how I had led, developed him as a suspect and how I led to getting probable cause to get the warrant.
[Prosecutor]: And at any time during that interview that lasted somewhere between 15 and 30 minutes did he ever deny killing her?
[Detective Dix]: No.
In his closing argument, the prosecutor made note of that fact that defendant never denied having a role in Sheila's murder. In his statement to the jury, the prosecutor stated that defendant "[n]ever at any time denied killing Sheila Harrington." Although defendant did not object at trial, on appeal defendant argues that the prosecutor's comment should not have been allowed as it violated his right to remain silent provided under the Fifth Amendment to the United States Constitution.
Under the Fifth Amendment and the United States Supreme Court's holding in Miranda v. Arizona, prior to any questioning, the person in custody must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. [I]f the individual . . . indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that [the individual held in custody] may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned.
Miranda v. Arizona, 384 U.S. 436, 444-45, 16 L. Ed. 2d 694, 706-07, reh'g denied, 385 U.S. 890, 17 L. Ed. 2d 121 (1966). In summary, "[t]he Miranda decision requires that a person taken into custody be advised, inter alia, that he has the right to remain silent. Implicit in this warning is the assurance that the exercise of the right to remain silent will carry no penalty." State v. McGinnis, 70 N.C. App. 421, 423, 320 S.E.2d 297, 300 (1984). According to our Supreme Court, "with or without a Miranda warning, a defendant's right to remain silent is guaranteed by the 5th amendment, as well as by article I, section 23 of the North Carolina Constitution, and . . . any comment upon the exercise of this right . . . [is] impermissible." Id. at 424, 320 S.E.2d at 300. "A defendant's statement given after Miranda warnings is admissible if the defendant is fully aware of the nature of the rights being waived and the consequence of such a waiver." State v. Ramer, 146 N.C. App. 611, 612, 553 S.E.2d 238, 239 (2001). It is worth noting, however, that a defendant may invoke his right to silence at any time; even after an initial waiver of this right. See Miranda, 384 U.S. at 445, 16 L. Ed. 2d at 707. Where a defendant has made an initial waiver, he must assert his right to silence in a "clear and unequivocal" manner for his invocation to be effective. See State v. Hanton, 140 N.C. App. 679, 686, 540 S.E.2d 376, 381 (2000).
Although the instant case presents a unique set of facts, our courts have examined similar cases to determine if the trial court allowed the State to make an impermissible reference to defendant's right to remain silent. InState v. Lyles, this Court examined a police detective's statement, and a reference to this statement made by the prosecutor, to determine if the State had violated defendant's right to remain silent. See State v. Lyles, 172 N.C. App. 323, 328-29, 615 S.E.2d 890, 894-95, appeal dismissed, 360 N.C. 73, 622 S.E.2d 625 (2005). The detective in question testified at trial that the defendant had waived his Miranda rights and agreed to be questioned. Id. at 328, 615 S.E.2d at 894. He further testified "that [the] defendant was quiet during questioning and often would not respond to questions." Id. In his closing argument, the prosecutor made reference to the defendant's testimony, stating: "[r]arely are you going to have a Defendant who stands up and says, I knew it was cocaine, I knew I had it. That would be direct evidence of knowledge." Id. at 329, 615 S.E.2d at 895. On review, the Lyles Court determined that the prosecutor's argument did not amount to an impermissible reference to defendant's right to remain silent.
Furthermore, in State v. Westbrooks our Supreme Court held that a defendant's prior silence is admissible to impeach the defendant's testimony at trial. See State v. Westbrooks, 345 N.C. 43, 67, 478 S.E.2d 483, 497 (1996). In Westbrooks, the defendant testified at trial that she had learned the identity of her husband's killer. Id. at 62, 478 S.E.2d at 494-95. In closing, the prosecutor noted that the defendant had not alerted the police of this information prior to trial. Id. at 67, 478 S.E.2d at 497. The prosecutor, therefore, raised the question of why the defendant had waited until trial to inform the police of this development. Id. On review, our Supreme Court held the prosecutor's argument was properly used to impeach the defendant's trial testimony because the defendant's "natural tendency would be for defendant to have mentioned the [pertinent] conversation prior to taking the stand." Id. Upon further review of defendant's argument, we note that several federal courts have addressed circumstances closely related to our own. In U.S. v. Goldman, 563 F.2d 501 (1st Cir. 1977), cert. denied, 434 U.S. 1067, 55 L. Ed. 2d 768 (1978),
the defendant, upon being arrested and read his Miranda rights, was given a standard waiver of rights form. The defendant signed this form and answered questions asked of him by the investigating agent. However, the defendant "either refused to respond or did not respond" to two of the agent's questions. During trial, the government introduced testimony concerning the defendant's conduct with regard to the two questions and commented upon it in summation. Following his conviction, the defendant appealed, claiming the testimony concerning the two questions asked by the agent and the government's remarks relating to the questions violated his right to remain silent. In analyzing his claim, the First Circuit found no indication in the record that the defendant wished to assert his right to remain silent, and the court commented that, based on the record, it appeared the defendant wished to give an exculpatory story. Stating that the defendant's decision not to answer a question "was simply a strategic choice, perhaps based on a fear that any answer might weaken [his] story," and that "the failure to answer was not a reassertion of rights," the First Circuit rejected the defendant's claim.
United States. v. Pitre, 960 F.2d 1112, 1125-26 (2d Cir. 1992) (citations omitted). Similarly, in Pitre, the defendant waived his Miranda rights and consented to questioning, but refused to answer when the police inquired as to who gave him a certain bag. Id. Citing theGoldman decision, the Second Circuit held that, because defendant had "clearly waived his right to remain silent" and the record contained no evidence that he "resurrected and asserted this right," the prosecutor's reference to defendant's refusal did not violate the defendant's right to remain silent. Id. at 1126. Thus, under the precedent established by Pitre and Goldman, a defendant's failure to answer a question, without more, does not equate to a resurrection and assertion of his right to remain silent.
In addition, several federal courts have held that testimony may be admitted, concerning a defendant's refusal to answer questions posed by police, where the defendant provided an initial waiver of his Miranda rights. See U.S. v. Andújar-Basco, 488 F.3d 549, 555 (1st Cir. P.R. 2007) ("As a general rule, any inculpatory or exculpatory statements made by a defendant (including silence with regard to particular questions) are admissible at trial insofar as they were the product of a knowing and voluntary waiver."); U.S. v. Burns, 276 F.3d 439, 442 (8th Cir. 2002) ("[W]here the accused initially waives his or her right to remain silent and agrees to questioning, but `subsequently refuses to answer further questions, the prosecution may note the refusal because it now constitutes part of an otherwise admissible conversation between the police and the accused.'" (citation omitted)); see also Rowan v. Owens, 752 F.2d 1186, 1190 (7th Cir. 1984), cert. denied, 476 U.S. 1140, 90 L. Ed. 2d 691 (1986) (holding that because the defendant waived his Miranda rights, it was permissible for police to testify to any incriminating statements the defendant made as well as to his indication that he did not want to answer any further questions, and this testimony did not invite the jury to infer the defendant must therefore be guilty). Although we note that the decisions of the aforementioned federal courts are not binding on this Court, we find their reasoning persuasive.
In the case sub judice, defendant waived his right to remain silent when he executed a waiver and voluntarily gave statements to the police. Detective Dix testified that, in the presence of another detective, she read defendant his Miranda rights from the standard High Point Police Department form. From the same form, Detective Dix also read defendant the waiver of his right to remain silent, which he signed. Detective Dix further testified that defendant was "willing to talk about what [she] needed to talk about." Defendant has presented no evidence that his waiver was executed involuntarily, unknowingly, or unintelligently. See Miranda, 384 U.S. at 444-45, 16 L. Ed. 2d at 706-07. Therefore, defendant executed a valid waiver of his right to remain silent. Defendant has also presented no evidence that he attempted to affirmatively reinvoke his right to remain silent or that he revoked his consent to be questioned at any time during the police interrogation. See id. Thus, the statements defendant made or failed to make during the interview are admissible because he validly waived his rights and did not at any time indicate he wished to reassert them.
In State v. Chapman, our Supreme Court found no reversible error when the prosecutor commented in his closing that the defendant had not admitted guilt. See State v. Chapman, 359 N.C. 328, 367-69, 611 S.E.2d 794, 823-24 (2005). The prosecutor stated that it would be helpful to have evidence where the defendant had said, "yes, I intended to kill him and then [the defendant] shoots [the victim]. We don't have that statement from the defendant where he said that to somebody or that he's admitted to that." Id. at 367, 611 S.E.2d at 823. On review, our Supreme Court noted that the prosecutor's closing argument explained "that the State may seek to prove premeditation and deliberation by circumstantial evidence because direct proof of those elements of first-degree murder . . . is often unavailable." Id. at 368, 611 S.E.2d at 823-24. Therefore, the Court held the reference to the defendant's failure to testify was an "indirect" comment, and as such, it was held that there was no prejudicial violation of the defendant's rights. Id. at 368-69, 611 S.E.2d at 824. Taken in context, the statements in the closing argument were not found to "'encourage the jury to infer guilt from defendant's silence[.]'" Id. at 368, 611 S.E.2d at 824 (citation omitted).
Analogously, in the case sub judice, we hold the prosecutor's argument was not so prejudicial and grossly improper as to require the trial court to intervene ex mero motu. Here, the State sought to show that defendant lacked remorse for killing Sheila. In support of this contention, the State emphasized the fact that defendant did not deny his guilt, even though he was a possible suspect in the murder investigation. According to the State, this lack of remorse constituted circumstantial evidence that defendant committed the murder with malice, premeditation, and deliberation. On review, we hold the comment was permissible, because when taken in context, it did not constitute an unlawful comment on defendant's choice to exercise his constitutional right to remain silent. Rather, the comment highlighted the circumstantial evidence of the case.
Defendant also argues that he was not directly asked if he murdered Sheila, and therefore, he was given no opportunity to deny his guilt. As we have discussed, the State referenced defendant's silence to highlight defendant's general attitude, mental state, and the circumstantial evidence pertaining to the elements of first-degree murder, and not to comment on defendant's constitutional right to remain silent. Although the record does not indicate that defendant was directly asked if he killed the victim, the trial transcript shows that he did not deny killing the victim when told he was a suspect in the murder investigation. Therefore, defendant's response to this information, or lack thereof, can be used as circumstantial evidence of defendant's general attitude. See Andújar-Basco, 488 F.3d at 555. Accordingly, we find no error.

V.
Finally, defendant argues that the trial court erred by "expressly disparaging defense counsel" during its jury instructions regarding reasonable doubt. We disagree.
Although defense counsel made a general objection to the jury instruction on reasonable doubt, requesting that the trial court use the pattern jury instruction, he declined to object to any particular language in the instruction. Thus, we will review the trial court's instruction for plain error. See Greene, 351 N.C. at 566-67, 528 S.E.2d at 578. To establish plain error, the defendant has the burden of showing "(i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice ordenial of a fair trial." Bishop, 346 N.C. at 385, 488 S.E.2d at 779.
When reviewing jury instructions for error, "the proper inquiry is not whether the instruction `could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury did so apply it." Victor v. Nebraska, 511 U.S. 1, 6, 127 L. Ed. 2d 583, 591 (1994) (citation omitted). "In Victor, the United States Supreme Court held that no particular formation of words is necessary to properly define reasonable doubt, but rather, the instructions, in their totality, must not indicate that the State's burden is lower than `beyond a reasonable doubt.'" State v. Taylor, 340 N.C. 52, 59, 455 S.E.2d 859, 862-63 (1995), cert. denied, 547 S.E.2d 426 (2001). "Absent a specific request, the trial court is not required to define reasonable doubt, but if the trial court undertakes to do so, the definition must be substantially correct." State v. Miller, 344 N.C. 658, 671, 477 S.E.2d 915, 923 (1996).
In State v. Bishop, the trial court instructed the jury that a "'reasonable doubt is not a doubt suggested by ingenuity of counsel or by your own ingenuity not legitimately warranted by the testimony.'" Bishop, 346 N.C. at 400, 488 S.E.2d at 788. On appellate review, our Supreme Court held "[t]he instruction given by the court, taken as a whole, properly informed the jury that reasonable doubt could arise out of insufficiency of the evidence." Id. Thus, our Supreme Court determined it was not reasonably likely that the jury applied the instruction in an unconstitutional manner. See id. at 401, 488 S.E.2d at 789.
Similarly, in State v. Hooks, 353 N.C. 629, 632, 548 S.E.2d 501, 504 (2001), cert. denied, 534 U.S. 1155, 151 L. Ed. 2d 1018 (2002), cert. denied, 360 N.C. 178 (2005), the trial court instructed the jury, in pertinent part, that a reasonable doubt is not "a doubt suggested by the ingenuity of counsel for either side or even by your own ingenuity of mind, not legitimate or warranted by the evidence and the testimony you've heard in this case." On review, our Supreme Court held that, "[w]hen read in context, this phrase instructs the jury that a doubt created by the ingenuity of counsel that is not supported by the evidence is not a reasonable doubt." Id. at 635, 548 S.E.2d at 506. The instruction was deemed permissible because the instructions given by the Hooks Court were substantially the same as those provided to the jury in Bishop. Id.
Here, the trial court instructed the jury, in pertinent part, that a reasonable doubt is:
not a mere possible or an academic or a forced doubt because there are few things in human experience which are beyond a shadow of a doubt or which are beyond all doubt. Nor is it a doubt suggested by the ingenuity of counsel or even by the ingenuity of your own mind not legitimately warranted by the evidence and testimony properly before you here in this case.
. . . A reasonable doubt is a doubt based on reason and common sense arising out of some or all the evidence that's been presented or lack or insufficiency of the evidence, as the case may be.
Simply stated, the instructions explained that a reasonable doubt is not "a doubt suggested by the ingenuity of counsel" and that a finding of reasonable doubt must be "legitimately warranted by the evidence and testimony properly before you here in this case." This definition, which is similar to the instructions deemed permissible in Bishop and Hooks, is substantially correct and it does not lessen the State's burden of proof. Furthermore, the definition here does not present a reasonable likelihood that the jury applied it unconstitutionally. Accordingly, we hold the trial court did not err in providing the aforementioned instruction.
No error.
Judges TYSON and STROUD concur.
Report per Rule 30(e).