HUNTER, JR., ROBERT N., Judge.
*476 The State appeals from a sua sponte order of the trial court granting Zachary David Thomsen ("Defendant") appropriate relief pursuant to N.C. Gen.Stat. § 15A-1420(d). The State argues the trial court erred in allowing its own motion for appropriate relief on Eighth Amendment grounds. Defendant argues this Court lacks jurisdiction to hear the case via a writ of certiorari, and even if this Court does have jurisdiction, the trial court did not abuse its discretion in granting Defendant appropriate relief.
For the following reasons, we vacate the trial court's order granting appropriate relief and the corresponding judgments and commitments, and remand for a new sentencing hearing.
I. Factual & Procedural History
On 11 June 2012, Defendant was indicted for statutory rape of a child less than thirteen years old, statutory sexual offense with a child less than thirteen years old, two counts of taking indecent liberties with a child, and two counts of sexual battery. At the time of the crimes for which Defendant was indicted, he was eighteen years old.
On 3 June 2013, pursuant to a plea agreement, Defendant entered a plea of guilty to first degree rape and first degree sexual offense. Under the terms of the plea agreement, the sentences for those two offenses *477 were to be consolidated into one active sentence of 300 months minimum and 372 months maximum. In accordance with the plea agreement, the State agreed to dismiss the two indecent liberties charges and two sexual battery charges. The trial court administered the plea colloquy, and the State presented the factual basis for the plea. The evidence presented to the trial court tended to show the following facts:
At the time of the charged offenses, Defendant was working at Chick-fil-a and living in *44 the home of his father, Brian Thomsen, and his father's fiancé, Violet James ("Ms. James").[1] The victim, Natalie James,[2] is Ms. James' eight-year-old daughter. On 31 May 2012, Ms. James was out of town, so Defendant picked up Natalie from school. Defendant took Natalie to the Chick-fil-a where he worked, then he took her to their shared home. Defendant and Natalie were at home by themselves. They played outside with a water gun and Defendant began tickling Natalie. He then brought Natalie into her bedroom and raped her vaginally and anally. Natalie told Defendant to stop, but he was too strong and overpowered her. The next day, on 1 June 2012, when Ms. James returned home, Natalie told her mother what happened. Natalie disclosed to Ms. James, and later to police, that Defendant raped her both anally and vaginally on several occasions. Ms. James immediately reported the incident to the Whispering Pines Police Department. Later, during her interview with police, Ms. James recalled that Natalie had some bleeding in her stool since December of 2011, and had several urinary tract infections during the same time period. Defendant was arrested on 1 June 2012. He admitted to the events of 31 May 2012 while he was in custody.
After the State presented the factual basis for the plea, the trial judge James M. Webb questioned Ms. James about Natalie's medical treatment before and after the 31 May 2012 rape, particularly regarding the treatment Ms. James sought for Natalie's prior urinary tract infections. Judge Webb then announced his belief that the proposed 300-month sentence was in the aggravated sentencing range. He identified the 300-month sentence as "the most that [Defendant] could receive" and refused to accept the agreed-upon sentence. Both the prosecutor and the Defendant's attorney disagreed with Judge Webb, stating in fact the first-degree rape charge to which Defendant pled guilty carried a 300-month mandatory minimum sentence. Judge Webb held the matter open to study the sentencing statutes.
*478 Three days later, on 6 June 2013, the trial court reconvened Defendant's plea hearing. Judge Webb ordered a presentence study of Defendant by the Department of Corrections, to gauge Defendant's mental, emotional, and physical health, and to determine whether Defendant is a sexually violent predator. The plea hearing resumed on 17 October 2013. The hearing began with further sua sponte questioning of Ms. James by Judge Webb. Ms. James testified that Defendant was the oldest child living in the home, and supervising the younger children was an "assumed task" for Defendant. Judge Webb then shifted his questioning of Ms. James to an incident approximately five years prior, when Natalie was three years old and was allegedly inappropriately touched by a thirteen-year-old boy who was the son of Natalie's caregiver. Judge Webb asked Ms. James about the extent of the prior abuse, and Ms. James responded adversely to this questioning, asking: "Why [do] we have to bring this up?" and "Why do we have to talk about this, sir?" and "Why is this important, sir?" Eventually, Ms. James testified that the prior abuse of Natalie was "some touching ... on the outside of her clothing" which Natalie reported to Ms. James immediately and Ms. James reported to the alleged perpetrator's parent and to the Fayetteville Police Department.
After Judge Webb finished questioning Ms. James, the State called Dr. Molly Berkoff, the pediatrician who examined Natalie after the 31 May 2012 rape. Dr. Berkoff testified that she examined Natalie on 22 June 2012. She stated "[t]here was nothing remarkable" about Natalie's examination, which she testified "is not unusual in cases of non-acute sexual abuse[.]" By "non-acute sexual abuse," Dr. Berkoff meant sexual abuse occurring more than 96 hours before the time of examination. She testified that, although Natalie's hymen was intact at the time of her examination, "children can have completely unremarkable exams despite having significant penetration or repeated episodes of trauma."
*45 When the State finished presenting its evidence, Judge Webb further questioned both Dr. Berkoff and the investigating officer, Lieutenant Rodney Dozier, of the Whispering Pines Police Department. After hearing their testimony, Judge Webb decided to continue the matter until 11 December 2013.
On 13 December 2013, the case was recalled in front of Judge Webb. Judge Webb made the following relevant findings of mitigating factors, corresponding with the numbering on the felony judgment worksheet:
(a), The defendant['s] age, or immaturity, at the time of the commission of the offense significantly reduced the defendant's culpability for the offense.
*479 8(b), The relationship between the defendant and the victim was otherwise extenuating.
....
And 21, additional written findings of factors in mitigation:
a. That in August, 2010 Brian Lawrence Thomsen, father of the defendant, and [Ms. James] commenced cohabitation at [Ms. James'] Whispering Pines, NC, residence along with [Ms. James'] two minor children and Mr. Thomsen's three minor children, including the defendant and the victim.
b. That on May 31st, 2012 [Ms. James] and Brian Thomsen allowed the minor child to be in the custody of the teenaged defendant without responsible adult supervision.
c. That Dr. Molly Berkoff, a pediatrician and the medical director for the Child Evaluation Clinic of the UNC Hospitals reviewed the victim's June 2nd, 2012 physical examination at the UNC Hospitals emergency room conducted by a sexual assault nurse examiner within 48 hours of the incident, and conducted her own physical examination of the victim on June 22nd, 2012 and concluded that neither examination either proved nor disproved the reported misconduct.
d. That Dr. Berkoff noted the emergency department documented redness and a deep V shape to the victim's hymen which the medical field does not characterize as being definitive evidence of penetration trauma, but rather simply a description of the way the victim's hymen looks and does not prove or disprove the allegations of sexual abuse.
e. That the victim's hymen was present.
f. That the victim's anal exam showed "no lesions, no discharge, no scarring".
g. That the Static 99-R places the defendant in the moderate-low risk category for being charged or convicted of another sexual offense.
*480 h. That the unanimous opinion of the board of experts of the sexually violent predator panel is that the defendant does not meet the criteria to be designated a sexually violent predator pursuant to North Carolina law.
i. That the defendant participated in Junior Reserve Officer Training Corps (JROTC) while attending high school.
After announcing the findings in mitigation, Judge Webb accepted the sentence agreed upon by the State and Defendant, stating "[i]t's the judgment of the Court that the defendant is to be confined for a minimum of 300 months and a maximum of 420 months in the State Department of Adult Correction." Judge Webb then stated in open court, "[t]he Court sua sponte enters an order granting appropriate relief," and proceeded to read aloud a written order, which included the following relevant findings of fact:
1. That on June 3rd, 2013 the Defendant, while represented by Moore County Attorney Bruce Cunningham, pled guilty to Rape of a Child, a B1 felony, and Sexual Offense of a Child, also a B1 felony, in violation of G.S. 14-27.2A and G.S. 14-27.4A respectively;
....
4. That pursuant to G.S. 14-27.2A, G.S. 14-27.4A and G.S. 15A-1340.17(f), the statutory mandatory minimum sentence for the offenses for which the Defendant pled guilty to is confinement for a minimum of 300 months (25 years) and a maximum of 420 months (35 years);
....
*46 21. That when the victim was 3 years of age she immediately reported to her mother that she was touched inappropriately by the 13 year old son of the owner/operator of an in home licensed day care located in Fayetteville, N.C.;
22. That while [Ms. James] reported this incident to the Fayetteville Police Department, no one was ever prosecuted;
23. That despite this unfortunate incident, referenced in the Child Medical Evaluation of the UNC School of Medicine conducted on June 22, 2012, [Ms. James] and *481 Brian Thomsen allowed the minor child to be in the custody of the teenaged Defendant without responsible adult supervision;
....
77. That the Defendant's paternal grandfather in his returned questionnaire correctly and accurately attributes the Defendant's criminal behavior to being left alone in the home with a child without adult supervision;
78. That the following two cases are instructive and insightful;
79. That on June 8th, 2009 the Moore County Grand Jury returned a true bill of indictment in case # 09 CRS 52230 indicting Randy Martin Baughn with the first degree murder of his wife, Abigail Baughn;
80. That on November 7th, 2012 the Moore County District Attorney and Defendant Baughn ... entered into a plea arrangement wherein Defendant Baughn was to plead guilty to second degree murder, a B2 Felony and receive an active sentence from the mitigated range of punishments of 94 months (7.83 years) minimum to 122 months (10.16 years) maximum;
....
86. That on February 2nd, 2012 the Guilford County Grand Jury in Guilford County case numbered 11 CRS 94622, indicted 32 year old Fernando Santana for the First Degree Murder of Daniel Corey Jones on November 28th, 2011;
....
88. That Defendant Santana pled guilty to Second Degree Murder and pursuant to the plea arrangement was sentenced to an active sentence from the aggravated range of punishments to a minimum of 292 months (24.3 years) and a maximum of 360 months (30 years) as a prior record level 4;
....
91. That it is unconsciousable [sic] that teenaged Defendant Thomsen under the facts and circumstances of this case *482 should be required to serve a mandatory active sentence in the North Carolina Department of Adult Correction of a minimum of 25 years and a maximum of 35 years.
In accordance with the findings of fact, Judge Webb made the following conclusions of law:
1. That the Defendant's sentence pursuant to G.S. 14-27.2A, G.S. 14-27.4A and G.S. 15A-1340.17(f), of confinement for a minimum of 300 months (25 years) and a maximum of 420 months (35 years) is grossly disproportionate when compared with the mitigating factors found at sentencing and the facts and unusual circumstances surrounding the crimes committed;
2. That the mandatory sentencing provisions of G.S. 14-27.2A, G.S. 14-27.4A and G.S. 15A-1340.17(f), as applied to the facts and circumstances of this case are in violation of the Defendant's rights under the Eighth and Fourteenth Amendments to the United States Constitution and constitute cruel and unusual punishment and a denial of due process of law; and
3. That the Defendant's sentence imposed this date pursuant to the plea arrangement and pursuant to G.S. 14-27.2A, G.S. 14-27.4A and G.S. 15A-1340.17(f) should be vacated.
After reading the order aloud, and vacating the previously imposed sentence, Judge Webb ordered: "It's the judgment of the Court he's to be confined for a minimum of 144 months," and a maximum of 233 months in the State Department of Adult Correction. Judge Webb signed a new judgment to that effect. The State noted its objection to the court's sua sponte motion for appropriate relief.
On 21 March 2014, the State filed a petition for writ of certiorari with this Court to *47 review Judge Webb's 13 December 2013 order granting Defendant appropriate relief. On 3 April 2014, Defendant filed a response opposing the State's petition for writ of certiorari, arguing this Court lacks jurisdiction to hear the case via writ of certiorari. On 10 April 2014 a panel of this Court granted the State's petition for writ of certiorari. The State filed its Record on Appeal on 17 November 2014, and both parties submitted their briefs to this Court. In his brief, Defendant restated his argument that this Court lacks jurisdiction to hear this case. The case was set to be heard on 6 April 2015. *483 On 24 February 2015, Defendant submitted to this Court a Motion to Hold Appeal in Abeyance Pending Determination of State v. Stubbs by the North Carolina Supreme Court. Stubbs was heard in the North Carolina Supreme Court on 13 January 2015. In his motion, Defendant contended Stubbs will resolve the issue of whether the Court of Appeals has jurisdiction to review an order of the trial court granting appropriate relief via writ of certiorari. On 9 March 2015, the State filed a response, opposing Defendant's motion to hold the appeal in abeyance. On 16 March 2015, we granted Defendant's motion, and ordered the appeal held in abeyance pending the resolution of State v. Stubbs.
On 10 April 2015, the Supreme Court issued its opinion in State v. Stubbs, 568A03-02. Following this decision we reviewed this case without further briefing from the parties.
II. Jurisdiction
The first issue is whether this Court has jurisdiction to review the trial court's sua sponte order granting Defendant appropriate relief via writ of certiorari. Because the State did not appeal the trial court's order in this case, the writ of certiorari is the only mechanism by which this Court could have jurisdiction.
As an initial matter, we must address whether the issue of jurisdiction is appropriate for this panel's review, given that a prior panel of this Court-the petition panel-allowed the State's petition for writ of certiorari on 8 April 2014. The well-settled and often-cited rule of this Court is one panel of the Court of Appeals may not overrule the decision of another panel on the same question in the same case. See N. Carolina Nat. Bank v. Virginia Carolina Builders, 307 N.C. 563, 563, 299 S.E.2d 629, 630 (1983). However, that rule was recently called into question by this Court in State v. Stubbs. In Stubbs, two judges stated where subject matter jurisdiction is at issue, the panel should not be compelled to follow the holding of a prior panel. See State v. Stubbs, --- N.C.App. ----, ----, 754 S.E.2d 174, 183, 185 (2014) (Dillon, J., concurring in separate opinion; Stephens, J., dissenting). In her dissent, Judge Stephens pointed out "[i]f a court finds at any stage of the proceedings that it lacks jurisdiction over the subject matter of a case, it must dismiss the case for want of jurisdiction." Id. at ----, 754 S.E.2d at 185 (quoting McAllister v. Cone Mills Corp., 88 N.C.App. 577, 579, 364 S.E.2d 186, 188 (1988) (emphasis added)).
Our decision in State v. Stubbs was reviewed by the North Carolina Supreme Court based on the dissenting opinion regarding jurisdiction. In *484 its opinion, the Supreme Court declined to address the issue of whether this Court is bound by a prior panel where subject matter jurisdiction is in question. Instead, the Supreme Court decided the case on other grounds, and held only
[a]s for whether a second panel of the Court of Appeals can revisit a determination of subject matter jurisdiction after a previous panel has already done so, we simply note that here, both panels did have subject matter jurisdiction.
State v. Stubbs, 368 N.C. 40, ----, 770 S.E.2d 74, 76 (2015).
Although Stubbs also dealt with this Court's subject matter jurisdiction to hear the State's appeal of an order granting a defendant's motion for appropriate relief ("MAR") via writ of certiorari, the substantive law addressed in Stubbs is not relevant to this case. In Stubbs, the defendant filed an MAR pursuant to N.C. Gen.Stat. § 15A-1415, alleging his sentence violated the Eighth Amendment of the United States *48 Constitution.[3] Id. at ----, 770 S.E.2d at 76. The trial court granted the defendant's motion and the State appealed to this Court via writ of certiorari. Id. at ----, 770 S.E.2d at 75. The Supreme Court held that the "denying" language of Rule 21 of Appellate Procedure[4] does not divest the Court of Appeals of jurisdiction to review an order of the trial court granting an MAR filed pursuant to N.C. Gen.Stat. § 15A-1415 via writ of certiorari. Id. at ----, 770 S.E.2d at 76. The Court of Appeals has jurisdiction to review the MAR order via writ of certiorari, the Supreme Court said, because such jurisdiction is specifically provided for by the legislature in N.C. Gen.Stat. § 15A-1422(c)(3). Id.
The rule stated in Stubbs is not applicable here because N.C. Gen.Stat. § 15A-1420(d) is benefitted by no similar legislative grant of appellate jurisdiction in this Court. The statute is silent as to either the State's or the defendant's ability to seek appellate review of sua sponte MAR orders. Had the Supreme Court in Stubbs decided the issue of whether *485 we are bound by a prior panel of this Court on jurisdictional issues, Stubbs would have controlled our decision in this case. Because the MAR statute addressed by the Supreme Court in Stubbs is not instructive here, and because-absent direction otherwise-we are bound by the decision of the petition panel in this case, we have jurisdiction to hear this case by the extraordinary writ of certiorari.
III. Standard of Review
"When considering rulings on motions for appropriate relief, we review the trial court's order to determine 'whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court.' " State v. Frogge, 359 N.C. 228, 240, 607 S.E.2d 627, 634 (2005) (quoting State v. Stevens, 305 N.C. 712, 720, 291 S.E.2d 585, 591 (1982) ). The trial court's findings of fact "are binding if they are supported by competent evidence and may be disturbed only upon a showing of manifest abuse of discretion. However, the trial court's conclusions are fully reviewable on appeal." State v. Lutz, 177 N.C.App. 140, 142, 628 S.E.2d 34, 35 (2006) (citation omitted).
IV. Analysis
A. Findings of Fact
"Abuse of discretion results where the trial court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." State v. Rollins, 224 N.C.App. 197, 199, 734 S.E.2d 634 (2012) (citation and quotation marks omitted). In this case, the trial court abused its discretion in making the following findings: (1) findings of fact # 21 and # 23 (discussing Natalie's prior abuse); (2) finding of fact # 77 (discussing Natalie's lack of "adult supervision"); (3) statutory mitigating factor 8(b) ("The relationship between the defendant and the victim was otherwise extenuating."); and (4) non-statutory mitigating factor 21(b) (discussing Natalie's lack of "adult supervision").
Findings of fact # 21 and # 23 state:
21. That when the victim was 3 years of age she immediately reported to her mother that she was touched inappropriately by the 13 year old son of the owner/operator of an in home licensed day care located in Fayetteville, N.C.;
....23.
*486 23. That despite this unfortunate incident ... [Ms. James] and Brian Thomsen allowed the minor child to be in the custody *49 of the teenaged Defendant without responsible adult supervision[.]
Natalie's prior abuse is irrelevant to Defendant's sentencing in this case. Furthermore, the finding that Natalie was "without adult supervision" is wholly unsupported by the facts in the record. The record shows that Defendant was the adult in charge of supervising Natalie on the day of the crime. The evidence is uncontroverted that: Defendant was eighteen years old-a legal adult-on the day of the crime; Defendant was gainfully employed at Chick-Fil-A; Defendant had "no prior involvement with the law[;]" Defendant supervised the younger children in the past; Ms. James was out of town on the day of the crime and Defendant was in charge of picking Natalie up from school and bringing her home.
Similarly, finding of fact # 77 states:
77. That the Defendant's paternal grandfather in his returned questionnaire correctly and accurately attributes the Defendant's criminal behavior to being left alone in the home with a child without adult supervision[.]
For the reasons stated above, this finding is manifestly unsupported by reason. Defendant was an eighteen year old adult at the time of the crime. Defendant had no prior criminal record and nothing in this record indicates Defendant was prone to this type of criminal behavior when he was left alone with Natalie.
We also find the trial court abused its discretion in two of its findings of mitigating factors, one statutory and one non-statutory. Although "the trial judge has wide latitude in determining the existence of aggravating and mitigating factors," State v. Canty, 321 N.C. 520, 524, 364 S.E.2d 410, 413 (1988), findings of mitigating factors may be stricken for abuse of discretion. See State v. Spears, 314 N.C. 319, 322-23, 333 S.E.2d 242, 244 (1985).
Judge Webb found statutory mitigating factor 8(b): "[t]he relationship between the defendant and the victim was otherwise extenuating." "An extenuating relationship should be found if circumstances show that part of the fault for a crime can be 'morally shifted' from defendant to the victim." State v. Mixion, 110 N.C.App. 138, 151, 429 S.E.2d 363, 371 (1993) (citation omitted). Here, it was a manifest abuse of discretion to regard Defendant's role as Natalie's caretaker as an extenuating circumstance warranting sentence mitigation. There is no competent evidence *487 in this record tending to show any facts which could reasonably support a finding of an extenuating relationship between Natalie and Defendant.
Finally, Judge Webb found non-statutory mitigating factor 21(b):
b. That on May 31st, 2012 [Ms. James] and Brian Thomsen allowed the minor child to be in the custody of the teenaged defendant without responsible adult supervision.
For the reasons stated above, this non-statutory mitigating factor constitutes a manifest abuse of discretion. We therefore will not consider the aforementioned findings of fact in our analysis of Defendant's Eighth Amendment claim.
B. Conclusions of Law: Eighth Amendment
The trial court's conclusions of law are fully reviewable on appeal. See Lutz, 177 N.C.App. at 142, 628 S.E.2d at 35. We now review the trial court's conclusion that Defendant's 300-month minimum and 420-month maximum sentence violated his rights under the Eighth and Fourteenth Amendments.
The Eighth Amendment applies to the states by virtue of the Fourteenth Amendment. Harmelin v. Michigan, 501 U.S. 957, 962, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). The Eighth Amendment prohibits cruel and unusual punishment; specifically, it forbids "extreme sentences that are grossly disproportionate to the crime." Id. at 1001, 111 S.Ct. 2680 (internal quotation marks omitted). To determine whether a sentence for a term of years is grossly disproportionate to a particular crime, "[a] court must begin by comparing the gravity of the offense and the severity of the sentence." Graham v. Florida, 560 U.S. 48, 60, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). "[I]n the rare case in which [this] threshold *50 comparison ... leads to an inference of gross disproportionality the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." Id. Our Supreme Court has held "[o]nly in exceedingly unusual non-capital cases will the sentences imposed be so grossly disproportionate as to violate the Eighth Amendment[.]" State v. Ysaguire, 309 N.C. 780, 786, 309 S.E.2d 436, 441 (1983).
In this case, Defendant pled guilty to rape of a child, in violation of N.C. Gen.Stat. § 14-27.2A, and sexual offense with a child, in violation of N.C. Gen.Stat. § 14-27.4A. Each of those crimes carry a mandatory minimum sentence of 300 months imprisonment. See N.C. Gen.Stat. § 14-27.2A(b) ("[I]n no case shall the person receive an active punishment of less than 300 months [.]"); N.C. Gen.Stat. § 14-27.4A(b) (same). The *488 State and Defendant agreed to a consolidated minimum sentence of 300 months' imprisonment. A 300-month sentence is not grossly disproportionate to the two crimes to which Defendant pled guilty. Furthermore, Defendant's 300-month sentence in this case is less than or equal to the sentences of many other offenders of the same crime in this jurisdiction. See State v. Agustin, --- N.C.App. ----, 747 S.E.2d 316 (2013) (holding sentence of 300 to 369 months' imprisonment was appropriate for rape of a child); State v. Bailey, 163 N.C.App. 84, 592 S.E.2d 738 (2004) (holding consecutive prison terms of 300 to 369 months for first-degree rape was not unconstitutional); State v. Stallings, 107 N.C.App. 241, 419 S.E.2d 586 (1992) (holding life sentence for first-degree sexual offense was not cruel and unusual punishment); State v. Mayse, 97 N.C.App. 559, 389 S.E.2d 585 (1990) (holding sentence of life imprisonment for first-degree rape was not unconstitutional).
We are unpersuaded by the trial court's comparison of the sentence imposed in this case with the sentences imposed in other, unrelated, second-degree murder cases. We follow our precedent, holding the original 300-month sentence imposed by the trial court does not violate the Eighth Amendment.
V. CONCLUSION
For the foregoing reasons, we vacate the 13 December 2013 order of the trial court granting Defendant appropriate relief and the corresponding judgments and commitments. We remand for a new sentencing hearing.
VACATED AND REMANDED.
Judge Dietz CONCURS.
Chief Judge McGEE dissents in a separate opinion.

Violet James is a pseudonym used to protect the identity of Ms. James' minor daughter.

Natalie James is a pseudonym used to protect the identity of the minor child.

N.C. Gen.Stat. § 15A-1415 allows a noncapital defendant to move for appropriate relief from the judgment against him on a number of enumerated grounds, including an alleged violation of the United States Constitution or the Constitution of North Carolina. See N.C. Gen.Stat. § 15A-1415 (2014).

Rule 21 of the North Carolina Rules of Appellate Procedure dictates the circumstances under which the appellate courts may review an order of the trial court via writ of certiorari. Prior to the Supreme Court's decision in Stubbs, the rule stated in pertinent part "[t]he writ of certiorari may be issued in appropriate circumstances by either appellate court ... for review pursuant to N.C.G.S. § 15A-1422(c)(3) of an order of the trial court denying a motion for appropriate relief." N.C. R.App. P. 21(a)(1) (2014) (emphasis added).