IN THE SUPREME COURT OF NORTH CAROLINA

No. 80A14

Filed 21 December 2016

STATE OF NORTH CAROLINA

v.

DAVID MARTIN BEASLEY YOUNG

On writ of certiorari to review an order on a motion for appropriate relief entered on 1 February 2013 by Judge Mark E. Powell in Superior Court, Buncombe County. On 5 April 2013, the Court of Appeals allowed the State's petition for writ of certiorari to review the order pursuant to N.C.G.S. § 7A-32(c). On 11 March 2014, the Supreme Court on its own initiative certified the case for review prior to determination in the Court of Appeals. Following oral argument on 6 May 2014, the Court on 28 January 2016 ordered supplemental briefing. Heard in the Supreme Court on 12 October 2016.

*Roy Cooper, Attorney General, by Robert C. Montgomery, Senior Deputy Attorney General, for the State-appellant.*

*Glenn Gerding, Appellate Defender, by Barbara S. Blackman and Kathryn L. VandenBerg, Assistant Appellate Defenders, for defendant-appellee.*

JACKSON, Justice.

In this case we consider whether the Superior Court, Buncombe County correctly ordered that defendant, who was sentenced to life imprisonment without the possibility of parole for a murder he committed at age seventeen, must be

resentenced as a result of the decision in *Miller v. Alabama*, ___ U.S. ___, 132 S. Ct. 2455 (2012).  Because we conclude that defendant's sentence is prohibited by *Miller*, we affirm.

On 3 May 1999, following a capital trial, a jury found defendant guilty of first-degree murder pursuant to the felony murder rule based on attempted armed robbery and "sale of a counterfeit controlled substance with a deadly weapon."  The jury also found defendant guilty of one count each of possession with intent to sell or deliver, sale of, and conspiracy to sell a counterfeit controlled substance.  Defendant's convictions resulted from his involvement in a disputed drug-related transaction that escalated into a fatal shooting on 8 January 1997.  *State v. Young*, 151 N.C. App. 601, 2002 WL 1543672, at *1 (2002) (unpublished).  Defendant was seventeen years old on the date of the offenses.  After considering whether defendant should receive a sentence of death or life imprisonment without the possibility of parole, the jury recommended life, and the trial court entered judgment accordingly.

In the wake of the Supreme Court's *Miller* decision, defendant filed a motion for appropriate relief in Superior Court, Buncombe County on 4 October 2012.  The court conducted a hearing on 18 January 2013 and in an order filed on 1 February 2013, found that defendant "was under the age of 18 at the time of the commission of the crime" and that when "the crime was committed, North Carolina law required the mandatory imposition of life imprisonment without parole for all offenders convicted

of first-degree murder." The court further explained that pursuant to *Miller*, "mandatory imposition of life without parole upon defendants who were under the age of 18 at the time of commission of their crimes constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution." Therefore, the court concluded that the 2012 *Miller* decision retroactively applied to defendant's 1999 sentence, vacated the sentence, and ordered a new sentencing hearing.

On 13 March 2013, the State filed a petition for writ of certiorari, petition for writ of supersedeas, and motion for temporary stay with the North Carolina Court of Appeals. The Court of Appeals allowed the petition for writ of certiorari and stayed the superior court's order pending disposition of the appeal. On 12 March 2014, this Court entered an order on its own initiative certifying the appeal for discretionary review prior to a determination by the Court of Appeals.

In a brief filed with the Court of Appeals, the State argued that the superior court erred by giving *Miller* retroactive effect and vacating defendant's sentence; however, on 25 January 2016, before this appeal was decided, the United States Supreme Court filed an opinion in *Montgomery v. Louisiana*, ___ U.S. ___, 136 S. Ct. 718 (2016). In pertinent part, the Supreme Court concluded that "[w]here state collateral review proceedings permit prisoners to challenge the lawfulness of their confinement, States cannot refuse to give retroactive effect to a substantive

constitutional right that determines the outcome of that challenge." *Id.* at ___, 136 S. Ct. at 731-32. The Supreme Court then held that "*Miller* announced a substantive rule of constitutional law." *Id.* at ___, 136 S. Ct. at 736. On 29 January 2016, shortly after *Montgomery* was decided, we ordered the parties to submit supplemental briefs.

In its supplemental brief the State acknowledges that "[t]he United States Supreme Court has now made clear [in *Montgomery*] that its holding in *Miller* applies retroactively to already final cases." Nevertheless, the State contends that defendant is not entitled to resentencing based upon *Miller* and *Montgomery*. The State asserts that "[e]ven though the General Assembly chose to call the sentence defendant received in this case 'life imprisonment without parole,'" defendant's sentence "is not really life imprisonment without parole but instead a sentence of life imprisonment with 'a meaningful opportunity to obtain release.'" Specifically, the State argues that N.C.G.S. § 15A-1380.5—which was enacted effective 1 May 1994 and repealed effective 1 December 1998—applies to the offenses that defendant committed on 8 January 1997. The State contends that section 15A-1380.5 thus provides a meaningful opportunity for release and therefore, defendant's sentence is not of the type addressed by the *Miller* decision. We disagree.[1]

---

[1] The State acknowledges that it did not raise this issue at the hearing on defendant's motion for appropriate relief. We conclude that the State has not preserved this issue for appellate review. N.C. R. App. P. 10(a)(1). Nevertheless, we now consider the State's argument in order "to expedite decision in the public interest." *Id.* at R. 2.

In several recent cases, the United States Supreme Court has considered how the two gravest punishments imposed in the United States criminal justice system should apply to persons who committed crimes as minors. *See, e.g.*, *Graham v. Florida*, 560 U.S. 48, 69 (2010) (noting that life imprisonment without the possibility of parole is the second greatest punishment permitted by law); *Roper v. Simmons*, 543 U.S. 551, 568 (2005) ("Because the death penalty is the most severe punishment, the Eighth Amendment applies to it with special force." (citing *Thompson v. Oklahoma*, 487 U.S. 815, 856 (1988) (O'Conner, J., concurring))). In this context, the Supreme Court has explained that "less culpability should attach to a crime committed by a juvenile than to a comparable crime committed by an adult." *Thompson*, 487 U.S. at 835 (plurality opinion). "Inexperience, less education, and less intelligence make the teenager less able to evaluate the consequences of his or her conduct while at the same time he or she is much more apt to be motivated by mere emotion or peer pressure than is an adult." *Id.* The Supreme Court has stated that relative to adults, minors may lack maturity, may have a lessened sense of responsibility, and may be more vulnerable to peer pressure and other outside influences. *Roper*, 543 U.S. at 569. Because of these differences, minors' "irresponsible conduct is not as morally reprehensible as that of an adult." *Id.* at 570 (quoting *Thompson*, 487 U.S. at 835).

Another consideration emphasized by the Supreme Court in its recent decisions is a minor offender's "capacity for change." *Graham*, 560 U.S. at 74. The

Supreme Court has stated that minors "still struggle to define their identity" and are less likely than adults to be "irretrievably depraved." *Roper*, 543 U.S. at 570. Citing both its precedents and literature from the social sciences, the Supreme Court concluded that minors' personality traits "are more transitory, less fixed"; that specific traits such as "impetuousness and recklessness that may dominate in younger years can subside"; and that "[o]nly a relatively small proportion of adolescents who experiment in risky or illegal activities develop entrenched patterns of problem behavior that persist into adulthood." *Id.* (quoting *Johnson v. Texas*, 509 U.S. 350, 368 (1993), and Laurence Steinberg & Elizabeth S. Scott, *Less Guilty by Reason of Adolescence: Developmental Immaturity, Diminished Responsibility, and the Juvenile Death Penalty*, 58 Am. Psychologist 1009, 1014 (2003), and citing Erik H. Erikson, *Identity: Youth and Crisis* (1968)).

Most relevant to our analysis here are the decisions in *Graham* and *Miller*, which set limits on the power of the States to impose a sentence of life imprisonment without the possibility of parole on defendants who committed crimes before the age of eighteen. *Miller*, ___ U.S. at ___, 132 S. Ct. at 2469; *Graham*, 560 U.S. at 82. In *Graham* the Supreme Court held that the Eighth Amendment to the United States Constitution "prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." 560 U.S. at 82. In pertinent part, the Supreme Court reasoned that removing the possibility of parole makes a life sentence "far more severe." *Id.* at 70 (quoting *Solem v. Helm*, 463 U.S. 277, 297 (1983),

*abrogated by Harmelin v. Michigan*, 501 U.S. 957 (1991)).  Life imprisonment without the possibility of parole "deprives the convict of the most basic liberties without giving hope of restoration, except perhaps by executive clemency—the remote possibility of which does not mitigate the harshness of the sentence."  *Id.* at 69-70 (citing *Solem*, 463 U.S. at 300-01).  In concluding that such a harsh sentence is never proportionate for a nonhomicide offense committed by a minor, the Supreme Court determined that establishing "a categorical rule [against life without the possibility of parole] gives all juvenile nonhomicide offenders a chance to demonstrate maturity and reform."  *Id.* at 79.  The Supreme Court stated:

> A State is not required to *guarantee* eventual freedom to a juvenile offender convicted of a nonhomicide crime.  What the State must do, however, is give defendants like Graham some *meaningful opportunity* to obtain release based on demonstrated maturity and rehabilitation.  It is for the State, in the first instance, to explore the means and mechanisms for compliance. . . . The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life.  It does prohibit States from making the judgment at the outset that those offenders *never* will be fit to reenter society.

*Id.* at 75 (emphases added.)

In *Miller* the Court addressed these same considerations with respect to two defendants who were both convicted of a murder committed at the age of fourteen. ___ U.S. at ___, 132 S. Ct. at 2460.  Relying upon *Graham*, the Court stated:

> [N]one of what [*Graham*] said about children—about their distinctive (and transitory) mental traits and environmental vulnerabilities—is crime-specific. . . .
>
> Most fundamentally, *Graham* insists that youth matters in determining the appropriateness of a lifetime of incarceration without the possibility of parole. In the circumstances there, juvenile status precluded a life-without-parole sentence, even though an adult could receive it for a similar crime. And in other contexts as well, the characteristics of youth, and the way they weaken rationales for punishment, can render a life-without-parole sentence disproportionate. . . .
>
> But the mandatory penalty schemes at issue here prevent the sentencer from taking account of these central considerations. By removing youth from the balance—by subjecting a juvenile to the same life-without-parole sentence applicable to an adult—these laws prohibit a sentencing authority from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender. That contravenes *Graham*'s . . . foundational principle: that imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children.

*Id.* at ___, 132 S. Ct. at 2465-66. The Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Id.* at ___, 132 S. Ct. at 2469. Although a sentencing court may find that a specific homicide justifies life imprisonment without the possibility of parole, the judge must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at ___, 132 S. Ct. at 2469.

Although *Miller* was decided in 2012, it must be given retroactive effect during certain state collateral review procedures. *Montgomery*, ___ U.S. at ___, 136 S. Ct. at 731-32. "Giving *Miller* retroactive effect . . . does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." *Id.* at ___, 136 S. Ct. at 736.

In this case, after a hearing on defendant's motion for appropriate relief, the superior court found that defendant was convicted of first-degree murder and that at the time of conviction, North Carolina law required that all sentences of life imprisonment be imposed without the possibility of parole. *See* N.C.G.S. § 14-17 (1997) (providing in part that "any person who commits such murder shall be punished with death or imprisonment in the State's prison for life without parole"). Nevertheless, the State argues that defendant's sentence "is not really life imprisonment without parole" because defendant may be able to obtain release pursuant to N.C.G.S. § 15A-1380.5, which at the time of defendant's conviction stated:

> (a)  For purposes of this Article the term "life imprisonment without parole" shall include a sentence imposed for "the remainder of the prisoner's natural life."

> (b)  A defendant sentenced to life imprisonment without parole is entitled to review of that sentence by a resident superior court judge for the county in which the defendant was convicted after the defendant has served 25 years of imprisonment. The defendant's sentence shall be

reviewed again every two years as provided by this section, unless the sentence is altered or commuted before that time.

(c)     In reviewing the sentence the judge shall consider the trial record and may review the defendant's record from the Department of Correction, the position of any members of the victim's immediate family, the health condition of the defendant, the degree of risk to society posed by the defendant, and any other information that the judge, in his or her discretion, deems appropriate.

(d)     After completing the review required by this section, the judge shall recommend to the Governor or to any executive agency or board designated by the Governor whether or not the sentence of the defendant should be altered or commuted.  The decision of what to recommend is in the judge's discretion.

(e)  The Governor or an executive agency designated under this section shall consider the recommendation made by the judge.

(f)     The recommendation of a judge made in accordance with this section may be reviewed on appeal only for an abuse of discretion.

*Id.* § 15A-1380.5 (1995) (repealed 1998).

Although this section might increase the chance for a sentence to be "altered or commuted," *id.* § 15A-1380.5(d), after careful consideration of *Graham*, *Miller*, and *Montgomery*, we conclude that section 15A-1380.5 does not support the State's contention that defendant's sentence "is not really life imprisonment without parole." Section 15A-1380.5 states that a defendant "is entitled to review of [his or her] sentence by a resident superior court judge," but it guarantees no hearing, no notice,

and no procedural rights. In addition, the statute provides minimal guidance as to what types of circumstances would support alteration or commutation of the sentence. The section requires only that the judge "consider the trial record" and notes that the judge "may" review other information "in his or her discretion." *Id.* § 15A-1380.5(c). Ultimately, "[t]he decision of what to recommend is in the judge's discretion," and the only effect of the judge's recommendation is that "[t]he Governor or an executive agency designated under this section" must "consider" it. *Id.* § 15A-1380.5(e). Because of these provisions, the possibility of alteration or commutation pursuant to section 15A-1380.5 is deeply uncertain and is rooted in essentially unguided discretion. Accordingly, this section does not reduce to any meaningful degree the severity of a sentence of life imprisonment without the possibility of parole. *See Graham*, 560 U.S. at 69-70 (stating that life imprisonment without the possibility of parole "deprives the convict of the most basic liberties without giving hope of restoration, except perhaps by executive clemency—the remote possibility of which does not mitigate the harshness of the sentence").

Moreover, section 15A-1380.5 does not address the central concern of *Miller*— that a sentencing court cannot treat minors like adults when imposing a sentence of life imprisonment without the possibility of parole. ___ U.S. at ___, 132 S. Ct. at 2466. As the Supreme Court stated in *Montgomery*:

> A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them. See, *e.g.*, Wyo. Stat.

Ann. § 6–10–301(c) (2013) (juvenile homicide offenders eligible for parole after 25 years). *Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment.*

___ U.S. at ___, 136 S. Ct. at 736 (emphasis added). This statement reflects the Supreme Court's foundational concern that at some point during the minor offender's term of imprisonment, a reviewing body will consider the possibility that he or she has matured. Nothing in section 15A-1380.5 requires consideration of this factor. In fact, after the judge's recommendation is submitted to "[t]he Governor or an executive agency designated under this section," N.C.G.S. § 15A-1380.5(e), nothing in section 15A-1380.5 gives any guidance to the final decision maker because this framework simply was not developed to address the concerns the Supreme Court raised in *Miller* and *Montgomery*.

Based upon his conviction for a crime that occurred when he was seventeen years old, defendant was sentenced to "imprisonment in the State's prison for life without parole" pursuant to a North Carolina statute that did not permit the sentencing court to consider a lesser punishment. *Id.* § 14-17 (1997). Although section 15A-1380.5 might increase the chance that this sentence will be altered or commuted, it does not provide a sufficiently meaningful opportunity to reduce the severity of the sentence to constitute something less than life imprisonment without the possibility of parole. We hold that defendant's sentence is prohibited by the

Eighth Amendment to the United States Constitution as interpreted in *Miller*. As a result, the trial court correctly vacated that sentence and ordered a new sentencing hearing. The court's order is affirmed and the case is remanded for resentencing.

AFFIRMED; REMANDED FOR RESENTENCING.