STROUD, Judge.
The State appeals from the trial court's order granting defendant's Amended Motion for Appropriate Relief ("Amended MAR") on the grounds that the trial court should have held a hearing to determine if he was competent to stand trial. Because defendant effectively abandoned this issue before the trial court, he waived his statutory right to a hearing. We therefore hold that the court erred in granting defendant's Amended MAR on this basis. Accordingly, we reverse and remand for further proceedings consistent with this opinion.
Background
I. Underlying Factual Background
The underlying facts surrounding this case were previously summarized by this Court:
The State's evidence at trial tended to show the following: On 25 June 2003 around 1:30 a.m., Sheila Harrington, a thirty-five-year-old female, was found dead at 1406 R.C. Baldwin Avenue, outside a daycare center. She was lying near a school bus dressed in the white T-shirt, khaki shorts, socks, and tennis shoes, the same that her sister, Anne Harrington ("Anne"), had last seen her wearing earlier that evening. When Sheila's body was discovered, fragments of cinder block were observed around her. Dr. Aaron Gleckman testified that an autopsy revealed Sheila had sustained multiple stab wounds to her face and neck, including one which severed her right carotid artery. In addition, Sheila sustained blunt force injuries to her head and chest. According to Dr. Gleckman, these injuries were consistent with being hit by a cinder block. Anne testified their family was aware that Sheila had a drug problem, specifically with crack cocaine, and they had tried to get her help.
Randy Earl Bethea ("Bethea"), one of defendant's friends, testified he had known Frank Durand Tomlin ("defendant") for about ten to fifteen years. According to Bethea, on the evening of 24 June 2003, he was walking with Shaqueda Gilbert, Tracy Little, A.J. Butler, and Brittany Watts near the daycare center. While walking, the friends saw defendant exit from a path beside the daycare center. Defendant approached the group and told Bethea that a female had run off with some of his crack. Defendant asked Bethea to come with him to the path so that defendant could show Bethea something, but Bethea declined and the group continued walking.
Shaqueda Gilbert ("Gilbert") testified that she saw defendant and Bethea talking once defendant approached the group. After Bethea returned to the group, he began talking with A.J. Butler ("Butler"). Although Gilbert testified she never heard defendant say that he killed anyone, Gilbert said Butler later told her that he could not believe defendant had "killed that woman."
When Butler was called to the stand to describe what took place that evening, Butler testified that he saw what appeared to be white shoes on the ground between the school bus and the daycare center. Butler stated at trial that he could not remember the content of his statements to Detective Dix, an officer with the High Point Police Department, when she interviewed him. Butler also testified, however, that his previous statements to Detective Dix, in which he indicated that he had seen defendant with a long knife in his sleeve near the daycare center on the night of the murder, were truthful.
James Jones ("Jones"), an acquaintance of defendant, testified that he saw defendant the day after the murder. Defendant told Jones that he had been fighting near the daycare center. Defendant talked as if the fight was serious and would be in the newspaper. Defendant said that he was out with some other men, and from this conversation Jones inferred that defendant meant he was out selling drugs. Defendant stated to Jones that a female tried to knock the drugs out of their hands, and then tried to run away with some of the drugs. Defendant attempted to stop the female from running away with the drugs by throwing rocks. Jones then testified that defendant said he chased the female up the street, punched her, and knocked her out. Jones noticed defendant was "jittery" and seemed nervous, so he later called defendant's aunt, who is also defendant's guardian, to alert her to the possibility that defendant could be in trouble.
The final witness for the State was Detective Dix, who arrived at the scene after Sheila's body was discovered and who became lead investigator on the case. After defendant's arrest, Detective Dix interviewed him. Detective Dix showed defendant a photograph of Sheila, lying on her back next to the school bus. Upon viewing the photograph of the victim, defendant responded, "she's a crack head" and stated that he did not "like crack heads."
State v. Tomlin , 193 N.C. App. 611, 670 S.E.2d 644, 2008 WL 4779843, at *1-2 (Nov. 4, 2008) (unpublished) (COA07-1558).
II. Procedural Background Leading to MAR
Defendant was indicted for Ms. Harrington's murder on 10 November 2003; at the time of the murder, he was 16 years old. On 6 January 2004, defendant's counsel filed a "Motion and Order Appointing Local Certified Forensic Examiner," Form AOC-CR-207, Rev. 2/01. In the motion, counsel alleged:
Per conversations with the Defendant himself and with Department of Social Services representative, movant finds that Defendant has an extensive placement history with foster care homes, group homes and inpatient hospitalizations. Such placements began as early as age 5. There have been repeated referrals for psychological case management services through the Department of Mental Health. While Defendant has been cooperative and responsive during movant's visits with him, Defendant does appear to be despondent and disoriented as to time and place.
The back of the form, which is entitled "Order Appointing Local Certified Forensic Examiner," is blank. A forensic examination to determine defendant's competency to stand trial based upon this motion was never done. Neither defendant nor his trial counsel ever requested this motion be reconsidered or for any other action based upon this motion prior to trial.
About three weeks after filing the Motion and Order Appointing Local Certified Forensic Examiner, on 30 January 2004, defendant's counsel filed a motion for ex parte hearing, requesting the trial judge allow for defendant to be "provided funds with which to retain and employ a psychologist to assist in the defense of these cases" because counsel "believe[d] it imperative that Defendant be tested as soon as practicable regarding level of intelligence, comprehension skills and all other factors which impact upon defendant's understanding of the charges against him and the possible sentences if he is convicted on these charges." The trial court granted the request.
Defendant's case proceeded to trial in May 2005. Before it began, the trial court addressed pending motions before it, beginning with three motions from the defense on complete recordation of the proceedings, exclusion of photographs and videotapes, and sequestration of witnesses. The court then asked: "Is there another motion?" The State responded "[t]he 404(b) motion." The trial court replied: "I thought I saw another one, but it must have had it stuck together." The court then addressed the pending motion regarding 404(b) evidence. Afterwards, the trial court asked whether there was "[a]nything else?" to address, and defendant's counsel responded: "That's all the motions, Your Honor."
On 19 May 2005, the jury found defendant guilty of first-degree murder. The trial court entered a mandatory sentence of life imprisonment without the possibility of parole. Defendant did not give written notice of appeal from his conviction.
On 14 December 2006, through a writ of certiorari, this Court granted defendant's request for a belated appeal. This Court found no error based on the issues presented in the direct appeal, and our Supreme Court denied discretionary review. On direct appeal, defendant did not raise any issue regarding his competency to proceed to trial or the 6 January or 30 January 2004 motions.
A few years later, on 8 April 2013, N.C. Prisoner Legal Services filed a Motion for Appropriate Relief ("MAR") on defendant's behalf, alleging error under the United States Supreme Court decision of Miller v. Alabama , 567 U.S 460, 132 S. Ct. 2455 (2012). Mr. John Bryson was appointed to represent defendant. The trial court held a hearing on the Miller claim but did not immediately rule on the motion and instead-at the State's request-held the motion in abeyance, or temporary suspension, pending resolution of Miller's retroactivity in the North Carolina decision of State v. Young , COA 13-646[1] .
While the motion was in abeyance, defendant-acting pro se -filed multiple motions, including a Motion for Leave to File an Amended Motion for Appropriate Relief. On 23 July 2015, the Court entered an order on its own motion appointing Mr. Bryson to represent defendant "without limitation to the Defendant's ability to amend his Motion for Appropriate Relief and add additional claims if necessary." The State did not object to or appeal this order.
On or about 17 June 2016, Mr. Bryson filed an Amended Motion for Appropriate Relief ("Amended MAR") on defendant's behalf. In the Amended MAR, defendant alleged and incorporated two additional claims to his original MAR: (Claim II) that his right to due process under the Fifth and Fourteenth Amendments was violated when he was tried, convicted, and sentenced at a time that he was not competent; and (Claim III) that his right to effective assistance of counsel under the Sixth and Fourteenth Amendments was violated when defendant's trial counsel failed to investigate and challenge the validity of defendant's Miranda waiver at the time he was interviewed by police. The State filed an answer to defendant's Amended MAR on 19 July 2016, conceding that a new sentencing hearing was required, based on retroactive new law applicable to defendant, but arguing that defendant's Claims II and III were procedurally barred because they could have been made on direct appeal and that both claims fail on the merits. Defendant filed a reply on 12 August 2016.
The trial court held a hearing on the Amended MAR on 15 August 2016. At the conclusion of the hearing, the trial court orally granted defendant's Amended MAR. The court entered a written order granting relief on 26 August 2016 and concluded that "[t]he trial court's failure in the instant case to conduct a hearing on Defendant's capacity to proceed after trial counsel questioned his capacity to proceed is error which implicates the Defendant's due process rights." The trial court granted defendant's request for relief under Claim II and ordered a new trial. The State timely appealed the trial court's order on defendant's Amended MAR to this Court.
Analysis
The sole issue before us on appeal is whether the trial court erred by allowing defendant's Amended MAR, which vacated defendant's conviction for first degree murder and ordered a new trial.
When considering rulings on motions for appropriate relief, we review the trial court's order to determine whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court. The trial court's findings of fact are binding if they are supported by competent evidence and may be disturbed only upon a showing of manifest abuse of discretion. The trial court's conclusions are fully reviewable on appeal.
State v. Thomsen , 242 N.C. App. 475, 485, 776 S.E.2d 41, 48 (2015) (citations and quotation marks omitted), aff'd , 369 N.C. 22, 789 S.E.2d 639 (2016).
I. Challenged Findings
The trial court's order granting relief made findings of fact mostly regarding the procedural aspects of this case. The State disputes or raises issue with the following findings of fact in the order:
6. There is no indication in the record that any action was ever taken upon defense counsel's written motion questioning Defendant's capacity to proceed.
7. There is no indication in the record that any court ever ordered an examination in response to defense counsel's motion.
....
19. While the Court's ruling on the resentencing question has been stayed, this Court expanded the appointment of John D. Bryson's representation of the Defendant to include the bringing forward of additional claims in a Motion for Appropriate Relief.
20. On June 17, 2016, the Defendant filed an Amended Motion for Appropriate Relief, bringing forward two additional claims.
Regarding findings 6 and 7, the State argues that these findings are not supported by the evidence, noting that the record shows that while the 6 January 2004 motion requesting an evaluation of defendant was never addressed further, the trial court granted defendant's motion for ex parte hearing and entered an order for funds to hire a psychologist "to aid in the defense of these matters[.]" But the State's argument conflates two different actions. It is obvious from the record that the trial court took no action on the 6 January 2004 motion, since the back of the form which includes an order for a forensic evaluation is not filled out or signed. Thus, Findings No. 6 and 7 correctly reflect the facts in this case and are supported by the evidence.
The State also contends that Findings No. 19 and 20 are conclusions of law rather than findings and that they are "incorrect because the trial court had no authority to expand the appointment of counsel's representation to include the brining forward of additional claims in a Motion for Appropriate Relief; at least not claims unrelated to the hearing that had already begun[.]" (Quotation marks and brackets omitted). But these are findings of fact, and they were supported by the evidence. Finding No. 19 reflects the fact that the trial court expanded Mr. Bryson's representation of defendant to bring forth additional claims in an amended MAR, and Finding No. 20 simply states that defendant did in fact file an Amended MAR on 17 June 2016. The State appears to be arguing that the trial court should not have entered the order expanding representation and should not have considered defendant's Amended MAR, but these events did occur. The record shows that these things did happen, so the findings are supported by the record. Again, these findings are just part of the procedural background of the case. The trial court's findings were supported by competent evidence. See, e.g., Thomsen , 242 N.C. App. at 485, 776 S.E.2d at 48. We now review the questions of law presented de novo . Id .
II. Mandatory Procedural Bar
The State contends that the trial court should have denied defendant's motion because it (1) was subject to a mandatory procedural bar and (2) lacked merit. We begin by addressing the procedural concerns.
First, the State argues that the trial court erred in granting defendant's MAR because the motion was procedurally barred under N.C. Gen. Stat. § 15A-1419(a) (2017). N.C. Gen. Stat. § 15A-1419(a) lists grounds for denying a motion for appropriate relief, including:
(1) Upon a previous motion made pursuant to this Article, the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so. ...
....
(3) Upon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so.
The State argues that defendant's failure to raise this issue on direct appeal results in a procedural bar to raise it now in an MAR. And the State contends that "[d]efendant did not overcome the mandatory procedural bar by demonstrating either good cause and actual prejudice or manifest injustice." Defendant claims that the question of his competency could not have been raised on direct appeal "because additional investigation was required to support this claim." Specifically, defendant notes that the trial court had to unseal documents in the record and also considered a report from defendant's counsel's file-Dr. Fisher's report-that was not part of the record.
Although arguably this appears to be an issue that could have been raised much sooner-before defendant's trial, on direct appeal, or in defendant's first MAR-we will assume for purposes of this appeal and in order to avoid further delay that defendant was not procedurally barred from raising the issue in his Amended MAR so that we may address it now.
The State also argues that "[e]ven if not procedurally barred due to direct appeal, [defendant's Amended MAR] was procedurally barred due to the original MAR." The State, however, did not object or file a notice of appeal from the trial court's initial order allowing defendant's counsel to amend the MAR. Thus, the State has waived this argument. See N.C. R. App. P. Rule 10(a)(1) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context.").
III. Invited Error
Even assuming that defendant was not procedurally barred from raising the issue of his competency on appeal, the trial court nevertheless erred in granting defendant's Amended MAR on this ground because defendant effectively invited the error that he now raises when he abandoned his motion before trial.
Under N.C. Gen. Stat. § 15A-1002(b) (2011)[2] , "[w]hen the capacity of the defendant to proceed is questioned, the court shall hold a hearing to determine the defendant's capacity to proceed." But in this case, defendant effectively waived his right to a hearing when he failed to request consideration of his initial motion and failed to assert his statutory right when given the opportunity before trial-and failed to mention it during trial, on direct appeal, and in his first MAR. In addition, although the forensic examination requested on 6 January 2004 was not completed, the trial court had also granted defendant's request just three weeks later for funds to have a psychological evaluation. The case was tried about a year and a half later, so defendant had plenty to time to obtain an evaluation and act upon the report as appropriate. While it is true that the court never held a separate hearing on the motion, the trial court attempted to address all motions pending before trial began, and when the court specifically asked defendant's counsel whether there were any additional motions to address, counsel replied: "That's all the motions, Your Honor." At that point, by failing to request consideration of his motion questioning defendant's capacity to proceed, defendant abandoned this issue, and it was no longer in contention. See, e.g., State v. Badgett , 361 N.C. 234, 259, 644 S.E.2d 206, 221 (2007) ("[T]he statutory right to a competency hearing is waived by the failure to assert that right at trial."); State v. King , 353 N.C. 457, 466, 546 S.E.2d 575, 584 (2001) ("[D]efendant waived his statutory right to a competency hearing under N.C.G.S. § 15A-1002(b) by his failure to assert that right.").
The trial court relied in part on Meeks v. Smith , 512 F. Supp. 335 (W.D.N.C. 1981) in reaching its conclusion that "[t]he trial court's failure in the instant case to conduct a hearing on Defendant's capacity to proceed after trial counsel questioned his capacity to proceed is error which implicates the Defendant's due process rights." The court also concluded that "[d]efendant did not waive his right to have the Court determine his capacity to proceed after it was questioned by defense counsel, either by defense counsel's failure to raise it at a later time or by defense counsel's employment of a privately retained psychologist."
In Meeks , the defendant was charged in 1976 for federal crimes of air piracy and kidnapping; he was eventually found not competent to stand trial after multiple psychiatric evaluations and the charges were dismissed. Id. at 336-37. Meeks was then charged by the State of North Carolina with kidnapping and armed robbery. Id. at 337. He received at least seven psychiatric evaluations to determine whether he was competent to stand trial, was found incompetent to stand trial on several occasions, and was involuntarily committed to Dorothea Dix Hospital. Id . Meeks was eventually discharged from the hospital and found competent to stand trial. Id . He entered a guilty plea and his attorney did not claim that Meeks was incompetent to stand trial at that time. Id . On appeal, the federal district court issued a writ of habeas corpus after concluding that Meeks did not receive a full and fair hearing to determine whether he was competent to stand trial. Id . at 339. The court noted that there was "substantial psychiatric evidence that petitioner, diagnosed as a paranoid schizophrenic suffering from delusions, was incapable of understanding the nature and object of the proceedings against him and unable to assist his counsel in preparation for trial." Id . at 338. The court found that Meeks' "failure to assert his alleged incompetence at the January 12, 1978 hearing does not bar him from seeking collateral relief, for an incompetent cannot waive the right to be exempt from trial. Nor can his attorney's failure to raise the issue be construed as waiver." Id . at 338.
Although decisions from federal courts may be persuasive authority, trial court decisions are not binding precedent in any court, and even federal appellate decisions are not binding in our state courts. See, e.g. , LendingTree, LLC v. Anderson , 228 N.C. App. 403, 412, 747 S.E.2d 292, 299 (2013) ("Notably, with the exception of the United States Supreme Court, federal appellate decisions are not binding upon either the appellate or trial courts of this State." (Citation and quotation marks omitted) ). Thus, Meeks -a federal district court decision-is not binding precedent on this Court.
Moreover, Meeks is distinguishable. The defendant's competency in Meeks was very much at issue from the beginning of proceedings. Meeks , 512 F. Supp. at 336-37. Meeks had been found incompetent to stand trial several times and had been diagnosed with serious psychiatric disorders which normally require life-long treatment. Id . Here, by contrast, other than the 6 January 2004 motion and later request for funds, there was nothing before the trial court to indicate that defendant's competency was a concern.
Our Supreme Court's decision in State v. Young , 291 N.C. 562, 231 S.E.2d 577 (1977), is much more applicable to the present case. In Young , the defendant similarly argued that the trial court erred in failing to hold a hearing to determine his capacity to proceed to trial as mandated by N.C. Gen. Stat. § 15A-1002. Young , 291 N.C. at 565, 231 S.E.2d at 579. After the defendant's counsel made a motion stating that it was his opinion that defendant may be mentally incapable of understanding the charges against him and entering a plea, the trial judge ordered that he been sent for psychiatric evaluation. Id . at 566, 231 S.E.2d at 580. As explained by our Supreme Court: "There was no finding or evidence of incapacity. Apparently no hearing was held subsequent to the defendant's commitment and there is no evidence that defendant or defense counsel demanded one or that either objected to the failure of the trial judge to hold such a hearing." Id . at 567, 231 S.E.2d at 580. Our Supreme Court held that the defendant in Young waived his right to a hearing by failing to assert that right:
It is true that the statute requires the court to hold a hearing to determine defendant's capacity to proceed if the question is raised. However, as stated in State v. Gaiten , 277 N.C. 236, 176 S.E.2d 778 (1970), "it is a general rule that a defendant may waive the benefit of statutory or constitutional provisions by express consent, failure to assert it in apt time, or by conduct inconsistent with a purpose to insist upon it." Further, this Court held in State v. Parks , 290 N.C. 748, 228 S.E.2d 248 (1976), a recent decision dealing with a failure to hold a hearing on a request for habeas corpus, that: "A corollary to this rule is that, generally, in order for an appellant to assert a constitutional or statutory right in the appellate courts, the right must have been asserted and the issue raised before the trial court. Further, it must affirmatively appear on the record that the issue was passed upon by the trial court."
In the case before us we find no indication that the failure to hold a hearing under G.S. 15A-1002(b)(3) (Cum. Supp. 1975) was considered or passed upon by the trial judge. Neither defendant nor defense counsel, although present at trial, questioned the correctness of the diagnostic finding that defendant was competent to stand trial, understood the charges and was able to cooperate with his attorney; and neither objected to the failure to hold the hearing. ... On these facts we hold that defendant's statutory right ... was waived by his failure to assert that right. His conduct was inconsistent with a purpose to insist upon a hearing to determine his capacity to proceed.
Young , 291 N.C. at 567-68, 231 S.E.2d at 580-81.
Here, as in Young , "we find no indication that the failure to hold a hearing under [ N.C. Gen. Stat. § 15A-1002(b) ] was considered or passed upon by the trial judge. Neither defendant nor defense counsel, although present at trial, ... objected to the failure to hold the hearing." Young , 291 N.C. App. at 567-68, 231 S.E.2d at 580-81. While defendant's trial counsel did file a motion in 2004, he did not request a hearing on the motion when given the opportunity to do so. And other than the initial motion and the request for funds to hire a psychologist to aid in the preparation of the defense, defendant's competency was never again raised as an issue before, during trial, or after-until defendant filed his Amended MAR. Defendant has not claimed on appeal that the trial court had before it such substantial evidence that it should have conducted a hearing sua sponte . We therefore conclude that defendant waived his statutory right to a hearing when he failed to assert that right to the court below.
Because defendant invited the error he now seeks to raise, we hold that the trial court erred in granting defendant's Amended MAR. Accordingly, we reverse and remand to the trial court for further proceedings consistent with this opinion.
Conclusion
We reverse the trial court's order granting defendant's motion for appropriate relief.
REVERSED.
Report per Rule 30(e).
Judges ELMORE and TYSON concur.

In 2016, our Supreme Court held that the trial court correctly vacated the defendant's sentence in Young because "that defendant's sentence [was] prohibited by the Eighth Amendment to the United States Constitution as interpreted in Miller ." State v. Young , 369 N.C. 118, 126, 794 S.E.2d 274, 279 (2016).

The N.C. legislature has recently amended the language in this statute, so we cite to the 2011 version, as it is the most recent printed volume containing the statute's language as it would have been at the time the proceedings in this matter occurred.